**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MERCEDEZ CARVAJAL,
        *Plaintiff-Appellant,*

      v.

UNITED STATES OF AMERICA,
substituted as Defendant in place
and instead of individual Federal
Defendants, Brett Kelly, Steven
Norkus, III, David Sikorra and
Luke Yoo,

        *Defendant-Appellee,*

      and

CITY OF LOS ANGELES; JASON
SPIZOUCO; GERARD KENNELLY; ED
GUTIERREZ; BRIAN AGNEW; JOHN
GUERRERO; RUBEN GALVIAN; MIKE
DAMIANIKES; JOE PREBE; ARMANDO
SANDOVAL; WILLIAM J. BRATTON,
        *Defendants.*

No. 06-55868

D.C. No.
CV-05-07124-PA

OPINION

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted
March 4, 2008—Pasadena, California

Filed April 11, 2008

3839

Before: John R. Gibson,* Diarmuid F. O'Scannlain, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Graber

*The Honorable John R. Gibson, Senior United States Circuit Judge for
the Eighth Circuit, sitting by designation.

**COUNSEL**

Eric Honig, Law Office of Eric Honig, Marina del Rey, California, and Paul L. Gabbert, Santa Monica, California, for the plaintiff-appellant.

Carla A. Ford, Assistant United States Attorney, Los Angeles, California, for the defendant-appellee.

**OPINION**

GRABER, Circuit Judge:

The main question that we must decide is whether the principles announced in *United States v. $227,000 U.S. Currency*, 69 F.3d 1491 (9th Cir. 1995), survive the enactment of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") (codi-

fied at 18 U.S.C. §§ 983, 985 and 28 U.S.C. § 2465). We hold that they do. Accordingly, we reverse the district court's dismissal of a claim for accrued interest on currency that the government wrongfully seized and then returned 10 months later, without having instituted judicial forfeiture proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Because the district court dismissed the relevant claims under Federal Rule of Civil Procedure 12(b)(6), we accept as true the allegations in the complaint. *Knox v. Davis*, 260 F.3d 1009, 1012 (9th Cir. 2001). Plaintiff Mercedez Carvajal sued the United States, the City of Los Angeles, and law enforcement officers, asserting several claims arising from a search of her residence on December 18, 2003, and the seizure of $75,800 of her savings. Plaintiff alleges that the search and seizure occurred without the benefit of a warrant and were unlawful. As the case reaches us, the only remaining defendant is the United States.

On March 11, 2004, Plaintiff submitted administrative claims contesting the seizure of the money. Six days later, Plaintiff's administrative claims were referred to the United States Attorney. On June 15, 2004, the 90-day statutory period expired. The United States neither instituted a timely judicial forfeiture proceeding nor requested an extension of the period within which it could commence a forfeiture proceeding, as required under CAFRA, 18 U.S.C. § 983(a)(3)(A).

On October 6, 2004, Plaintiff filed a motion in the United States District Court for the Central District of California, seeking the return of the $75,800 plus interest and attorney fees. Although the government initially opposed the motion, it returned the money to Plaintiff on October 19, 2004. Following the return of the money, Plaintiff withdrew her motion before the district court had a chance to rule on it, and the case was dismissed. The United States never paid interest to Plaintiff on the $75,800 for the period during which it held the

currency, nor did it reimburse her for the $19,906.61 in attorney fees that she incurred in contesting the seizure.

Plaintiff filed a timely complaint against the United States and others, alleging a number of constitutional and statutory violations and reasserting her claims for interest and attorney fees. Plaintiff sought interest on the $75,800 under CAFRA; our holding in *$227,000*; and the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. She also claimed attorney fees and costs under CAFRA; the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A); and the APA.

The United States moved to dismiss several of Plaintiff's claims, including all of her claims for interest and attorney fees. The district court granted the motion with respect to the claims for interest and attorney fees and dismissed those claims with prejudice. Pursuant to a stipulation of the parties, the district court then dismissed Plaintiff's remaining claims and entered judgment on April 13, 2006. On appeal, Plaintiff challenges only the dismissal of her claims for interest on the currency, based on the principles that we announced in *$227,000*, and attorney fees under the EAJA.

## STANDARD OF REVIEW

We review de novo a district court's dismissal of a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Ohel Rachel Synagogue v. United States*, 482 F.3d 1058, 1060 (9th Cir. 2007).

## DISCUSSION

A.  *The district court improperly dismissed Plaintiff's claim for interest on wrongfully seized currency.*

[1] In *$227,000*, 69 F.3d at 1498, an opinion that predates the enactment of CAFRA by about five years, we held that sovereign immunity does not bar a claim against the United

States for interest on wrongfully seized money. In reaching our conclusion, we acknowledged the general rule "that 'interest cannot be recovered in a suit against the government in the absence of an express waiver of sovereign immunity.' " *Id.* at 1493 (quoting *Library of Congress v. Shaw*, 478 U.S. 310, 311 (1986)). But we characterized that rule as applicable to "inchoate interest, as an item of damages in a forfeiture action." *Id.* at 1497. By contrast, we explained, the payment of interest on wrongfully seized money is not a payment of damages, but instead is the disgorgement of a benefit "actually and calculably received from an asset that [the government] has been holding improperly." *Id.* at 1498. As a result, no express waiver of sovereign immunity was necessary, and the plaintiff was entitled to the payment of interest actually or constructively earned by the government during the period the asset was wrongfully held. *Id.*

The United States first requests that we read into *$227,000*, as the district court did, the requirement of a court order before interest accrues on improperly seized money. Under such an interpretation, Plaintiff would not be entitled to interest because the United States eventually returned Plaintiff's money without a court order. Although the district court and the United States correctly identify a factual distinction between this case and *$227,000*, our holding in *$227,000* rested on a different point.

**[2]** Interest earned, whether actually or constructively, is part of the *res* that must be returned to the owner. *Id.* at 1496. Had the district court's order for the return of the money served as the trigger for a right to interest, we would have ruled in *$227,000* that the plaintiff was entitled to interest from the date of that order. Instead, we held that the plaintiff was entitled to interest accruing from a date eight years earlier. *Id.* We reasoned from the common law: "If the government seized . . . a pregnant cow and was ultimately found not to be entitled to the cow after it had given birth, it could hardly be contended that the government had fulfilled its duty

by returning the now-barren cow, but retaining the calf." *Id.* (footnote omitted). Thus, the plaintiff had a right to the interest even in the absence of a court order and, moreover, the right existed in the absence of an express waiver of sovereign immunity.

**[3]** The United States' voluntary return of Plaintiff's $75,800, along with its concession that it did not have a right to the money, obviated the need for a court order to that effect. Under the government's rationale, the United States could avoid the disgorgement of interest—no matter how long it wrongfully held funds—by voluntarily returning seized money at the very last minute before such an order is entered. Permitting the United States to retain the proverbial calf would be inconsistent with our holding in *$227,000*. As a result, we are bound by that decision unless and until clearly irreconcilable intervening authority requires a different result. *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc).

**[4]** The United States next argues that CAFRA, "as a comprehensive statute governing forfeiture procedures," supersedes *$227,000* and does not provide for the return of interest in this case. In support, the government cites 28 U.S.C. § 2465(b)(2)(A), which states that "[t]he United States shall not be required to disgorge the value of any intangible benefits nor make any other payments to the claimant not specifically authorized by this subsection." The government reads that phrase to mean that CAFRA preempts all other types of recovery in seizure cases and, because CAFRA does not provide for the payment of interest in the absence of a civil forfeiture proceeding, *see id.* § 2465(b)(1)(C) (providing that, in cases involving currency, the government shall be liable for interest "in any civil proceeding to forfeit property . . . in which the claimant substantially prevails"), Plaintiff's claim must fail as a matter of law.

In determining whether CAFRA superseded our holding in *$227,000*, we turn to the text of the statute, as well as its

object and policy, to discern congressional intent. *See United States v. $493,850.00 in U.S. Currency*, No. 06-15225, 2008 WL 659574, *5-*7 (9th Cir. Mar. 13, 2008) (analyzing CAFRA to determine whether Congress intended to supersede the burden of proof requirement in 19 U.S.C. § 1615 and concluding that it did not). We also consider the legislative history of the statute. *Tahara v. Matson Terminals, Inc.*, 511 F.3d 950, 953 (9th Cir. 2007).

In relevant part, 28 U.S.C. § 2465 provides:

(a) Upon the entry of a judgment for the claimant in any proceeding to condemn or forfeit property seized or arrested under any provision of Federal law —

(1) such property shall be returned forthwith to the claimant or his agent; and

(2) if it appears that there was reasonable cause for the seizure or arrest, the court shall cause a proper certificate thereof to be entered and, in such case, neither the person who made the seizure or arrest nor the prosecutor shall be liable to suit or judgment on account of such suit or prosecution, nor shall the claimant be entitled to costs, except as provided in subsection (b).

(b)(1) Except as provided in paragraph (2), in any civil proceeding to forfeit property under any provision of Federal law in which the claimant substantially prevails, the United States shall be liable for—

(A) reasonable attorney fees and other litigation costs reasonably incurred by the claimant;

(B) post-judgment interest, as set forth in section 1961 of this title; and

(C) in cases involving currency, other negotiable instruments, or the proceeds of an interlocutory sale —

(i) interest actually paid to the United States from the date of seizure or arrest of the property that resulted from the investment of the property in an interest-bearing account or instrument; and

(ii) an imputed amount of interest that such currency, instruments, or proceeds would have earned at the rate applicable to the 30-day Treasury Bill, for any period during which no interest was paid (not including any period when the property reasonably was in use as evidence in an official proceeding or in conducting scientific tests for the purpose of collecting evidence), commencing 15 days after the property was seized by a Federal law enforcement agency, or was turned over to a Federal law enforcement agency by a State or local law enforcement agency.

(2)(A) The United States shall not be required to disgorge the value of any intangible benefits nor make any other payments to the claimant not specifically authorized by this subsection.

(B) The provisions of paragraph (1) shall not apply if the claimant is convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal Criminal forfeiture law.

(C) If there are multiple claims to the same property, the United States shall not be liable for costs and attorney fees associated with any such claim [under certain enumerated circumstances.]

. . . .

    (D) If the court enters judgment in part for the claimant and in part for the Government, the court shall reduce the award of costs and attorney fees accordingly.

**[5]** It is clear from the statutory text that the interest payment provision of CAFRA, 28 U.S.C. § 2465(b)(1)(C), is triggered *only* when the government institutes civil forfeiture proceedings and a plaintiff substantially prevails. We held as much in *Synagogue*, 482 F.3d at 1064, when we explained that CAFRA's interest payment provision does not apply when the government voluntarily remits seized funds in response to an administrative claim. But our opinion in *Synagogue* did not address any alternate theories for recovery. Although the plaintiff in *Synagogue* also argued for the application of our holding in *$227,000*, we had no cause to address that issue because the plaintiff had failed to raise it before the district court. *Id.* at 1060 n.4. No such failing exists here. Now reaching the issue, we agree with Plaintiff and reject the government's contention that CAFRA supplanted all pre-CAFRA forfeiture law. *Cf. $493,850.00*, 2008 WL 659574, at *7 (holding that CAFRA did not supersede the burden of proof requirement in 18 U.S.C. § 1615).

**[6]** The provision that the United States cites, § 2465(b)(2)(A), provides that the government need not make payments "*to the claimant* not specifically authorized by this subsection." (Emphasis added.) The "subsection" to which it refers is subsection (b), which identifies "the claimant" as one who substantially prevails in a civil proceeding. *Id.* § 2465(b)(1). Thus, when its parts are read together, § 2465(b)(2)(A) provides that no payments other than those identified in § 2465(b)(1) will be made to a substantially prevailing claimant in a civil forfeiture proceeding. That provision, however, does not address in any way what happens in the *absence* of a civil forfeiture proceeding. Had Congress

drafted the text of § 2465(b)(2)(A) to state that "[t]he United States shall not be required to disgorge the value of any intangible benefits nor make any other payments to *a* claimant," then Defendant's interpretation might be sound. However, by preceding "claimant" with the definite article "the," Congress referenced an already defined limit to the statute's application.

**[7]** Our interpretation finds further support in the introductory phrase of § 2465(b)(1), "[e]xcept as provided in paragraph (2)," which is followed by a rule concerning liability to claimants who prevail *in judicial forfeiture proceedings*. That introductory phrase clearly identifies paragraph (2) as a qualification to liability in judicial forfeiture proceedings, thereby rendering § 2465(b)(2)(A) relevant only when CAFRA itself directly applies. Because the parties agree, as they must, that CAFRA does not apply, *see Synagogue*, 482 F.3d at 1064 (holding that § 2465(b)(1) applies only when a claimant substantially prevails in a judicial forfeiture), permitting Plaintiff's recovery of interest here does not conflict with the statute.

CAFRA's enactment in 2000 did, of course, substantially revise the law governing civil asset forfeitures. Among the changes imposed by Congress was a requirement that, ordinarily, the United States institute a judicial forfeiture proceeding within 90 days of the submission of a claim for the return of seized property. 18 U.S.C. § 983(a)(3)(A). A failure to institute a timely judicial forfeiture proceeding requires the return of the property and constitutes a waiver of the right to seek civil forfeiture in connection with the same underlying offense. *Id.* § 983(a)(3)(B). In addition, Congress expressly provided for the recovery of attorney fees, litigation costs, and *post-judgment interest* in certain circumstances of wrongfully seized property. 28 U.S.C. § 2465(b)(1).

Considering this overall statutory scheme, *see Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 880 (9th Cir.

2001) (en banc) (reading the statute as a whole because "[n]o statutory provision is written in a vacuum"), we find the government's position inconsistent. The government's failure to comply with 18 U.S.C. § 983(a)(3) would result in an inability to pursue forfeiture, but would yield the benefit of accrued interest on the improperly seized property, a benefit that only increases if the government refuses to comply with the law and return the property. Even in the absence of *$227,000*, we would not interpret CAFRA to yield such an irrational result. *See United States v. Combs*, 379 F.3d 564, 569 (9th Cir. 2004) (stating that even when a statute's meaning is plain, a court may nevertheless interpret the statute to avoid "a result contrary to the statute's purpose or lead to unreasonable results").

Our holding is also consistent with the concerns expressed by Congress in CAFRA's legislative history. When it enacted CAFRA, Congress acknowledged a circuit split that arose in the wake of our decision in *$227,000*.[1] H.R. Rep. No. 106-192, at 19 n.79 (1999). Although Congress did not state that the legislation was resolving that split, it did find the denial of interest to a property owner who prevailed in a forfeiture action to be "manifestly unfair." *Id.* at 19. The Sixth Circuit

---

[1]With *$227,000*, we were the first circuit court to weigh in on the question whether sovereign immunity bars the collection of interest on wrongfully seized money. The Sixth and Eleventh Circuits followed our lead, while the First, Second, Eighth, and Tenth Circuits reached the opposite conclusion, generally holding that *Library of Congress v. Shaw*, 478 U.S. 310, 311 (1986), provides a clear bar to the government's liability for interest on seized funds in the absence of an express waiver. *Compare United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 504 (6th Cir. 1998) (affirming disgorgement of interest), *and United States v. 1461 W. 42nd St.*, 251 F.3d 1329, 1338 (11th Cir. 2001) (suggesting that the Eleventh Circuit would follow *$515,060.42*), *with Larson v. United States*, 274 F.3d 643, 647-48 (1st Cir. 2001) (per curiam) (holding that sovereign immunity barred recovery of interest), *Ikelionwu v. United States*, 150 F.3d 233, 239 (2d Cir. 1998) (same), *United States v. $7,990.00 in U.S. Currency*, 170 F.3d 843, 845-46 (8th Cir. 1999) (same), *and United States v. $30,006.25 in U.S. Currency*, 236 F.3d 610, 615 (10th Cir. 2000) (same).

has stated that CAFRA "ratified the outcome, if not the ratio-nale" of our decision in *$227,000*. *See United States v. Ford*, 64 F. App'x 976, 981 n.5 (6th Cir. 2003) (unpublished disposition) (concluding, in dictum, that CAFRA endorsed the Sixth Circuit's opinion in *$515,060.42*, which followed *$227,000*).**²**

**[8]** Considering the text of CAFRA, the overall statutory scheme, and the legislative history, we hold that *$227,000* remains good law. That being so, the district court improperly dismissed Plaintiff's claim for interest on the $75,800 seized by the United States.

B.    *The district court properly dismissed Plaintiff's claim for attorney fees.*

**[9]** To obtain attorney fees under the EAJA, Plaintiff must show that: (1) she is the prevailing party; (2) the government has failed to meet its burden of showing that its position was substantially justified or that special circumstances make the award unjust; and (3) the requested attorney fees are reasonable. 28 U.S.C. § 2412(d)(1)(A)-(B). Because she was not a prevailing party in the 2004 motion, Plaintiff's claim for attorney fees fails.

**[10]** To satisfy the "prevailing party" requirement, Plaintiff must be able to show that she received "relief from the federal court." *Li v. Keisler*, 505 F.3d 913, 917 (9th Cir. 2007) (citing *Carbonell v. INS*, 429 F.3d 894, 899 (9th Cir. 2005)). Such relief must be in the form of a " 'judicially sanctioned' " " 'material alteration of the legal relationship of the parties.' " *Id.* (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604-05 (2001)). Plaintiff did not prevail in the 2004 action; she voluntarily withdrew her complaint, and the district court dis-

---

**²**Sixth Circuit rules permit citation to unpublished opinions. 6th Cir. R. 28(g).

missed the case. As a result, Plaintiff does not satisfy the requirements of *Buckhannon* and its progeny within this circuit, all of which require a "judicial imprimatur." *See, e.g.*, *id.* at 918. Because there was no judicial imprimatur here, the district court properly dismissed Plaintiff's claim for attorney fees under the EAJA.

AFFIRMED in part, REVERSED in part, and REMANDED. Costs on appeal shall be awarded to Plaintiff.