**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                              *Plaintiff,*

                and

CHRISTOPHER KIM, a/k/a KYUNG
JOON KIM, KJ KIM and CHRIS KIM;
BORA LEE; SE YOUNG KIM; YOUNG
AI KIM; ERICA M. KIM; FIRST
STEPHORA AVENUE, INC.;
ALEXANDRIA INVESTMENT, LLC,
                 *Claimants-Appellees,*

OPTIONAL CAPITAL, INC., a/k/a
OPTIONAL VENTURES,                  No. 06-56158
                 *Claimant-Appellant,*
                                    D.C.   Nos.
             v.                   CV-04-02788-ABC
                                  CV-04-03386-ABC
REAL PROPERTY LOCATED AT 475      CV-05-03910-ABC
MARTIN LANE, BEVERLY HILLS
CALIFORNIA, Real Property located
at, a/k/a Seal A; 924 NORTH
BEVERLY DRIVE, BEVERLY HILLS,
CALIFORNIA, Real Property located
at, a/k/a/ Seal A; ALL FUNDS IN
CREDIT SUISSE PRIVATE BANKING
ACCOUNT NO. 0251-844548-6 IN
THE NAME OF ALEXANDRIA
INVESTMENT, LLC; ALL FUNDS IN
CREDIT SUISSE PRIVATE BANKING
ACCOUNT NO. 0251-922787-3 IN
THE NAME OF ERICA MIHAE KIM;

$956,525.06 IN FUNDS SEIZED, from United Commercial Bank Account No. 63600084, in the name of First Stephora Avenue, Inc.; $157,329.05 IN FUNDS SEIZED, from United Commercial Bank Account No. 63599914, in the name of Alexandria Investment, LLC; $174,315.16 IN FUNDS SEIZED from Wilshire State Bank Account No. 3219380, in the name of Se Young Kim; 2004 MERCEDES BENZ CL500, one; 2002 MERCEDES BENZ S500, one; 1990 FERRARI 550 MARANELLO, one; 2003 LANDROVER RANGE ROVER, one; 2002 PORSCHE BOXSTER, one; 2002 TOYOTA TACOMA PICKUP TRUCK, one; 1999 PORSCHE CARRERA, one VARIOUS MISCELLANEOUS FURNITURE AND HOUSEHOLD ITEMS,

*Defendants.*

UNITED STATES OF AMERICA,
                              *Plaintiff,*

              and

CHRISTOPHER KIM, a/k/a KYUNG
JOON KIM, KJ KIM and CHRIS KIM;
BORA LEE; SE YOUNG KIM; YOUNG
AI KIM; ERICA M. KIM; FIRST
STEPHORA AVENUE, INC.;
ALEXANDRIA INVESTMENT, LLC,
                    *Claimants-Appellees,*

DAS CORPORATION, f/k/a DAEBU
MACHINERY CO. LTD.,
                    *Claimant-Appellant,*

                    v.

REAL PROPERTY LOCATED AT 475
MARTIN LANE, BEVERLY HILLS
CALIFORNIA, Real Property located
at, a/k/a Seal A; 924 NORTH
BEVERLY DRIVE, BEVERLY HILLS,
CALIFORNIA, Real Property located
at, a/k/a/ Seal A; ALL FUNDS IN
CREDIT SUISSE PRIVATE BANKING
ACCOUNT NO. 0251-844548-6 IN
THE NAME OF ALEXANDRIA
INVESTMENT, LLC; ALL FUNDS IN
CREDIT SUISSE PRIVATE BANKING
ACCOUNT NO. 0251-922787-3 IN
THE NAME OF ERICA MIHAE KIM;

No. 06-56168

D.C.  Nos.
CV-04-02788-ABC
CV-04-03386-ABC
CV-05-03910-ABC

$956,525.06 IN FUNDS SEIZED, from United Commercial Bank Account No. 63600084, in the name of First Stephora Avenue, Inc.; $157,329.05 IN FUNDS SEIZED, from United Commercial Bank Account No. 63599914, in the name of Alexandria Investment, LLC; $174,315.16 IN FUNDS SEIZED from Wilshire State Bank Account No. 3219380, in the name of Se Young Kim; 2004 MERCEDES BENZ CL500, one; 2002 MERCEDES BENZ S500, one; 1990 FERRARI 550 MARANELLO, one; 2003 LANDROVER RANGE ROVER, one; 2002 PORSCHE BOXSTER, one; 2002 TOYOTA TACOMA PICKUP TRUCK, one; 1999 PORSCHE CARRERA, one VARIOUS MISCELLANEOUS FURNITURE AND HOUSEHOLD ITEMS,

*Defendants.*

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

CHRISTOPHER KIM, a/k/a KYUNG
JOON KIM, KJ KIM and CHRIS KIM;
BORA LEE; SE YOUNG KIM; YOUNG
AI KIM; ERICA M. KIM; FIRST
STEPHORA AVENUE, INC.;
ALEXANDRIA INVESTMENT, LLC,
*Claimants-Appellees,*

v.

REAL PROPERTY LOCATED AT 475
MARTIN LANE, BEVERLY HILLS
CALIFORNIA, Real Property located
at, a/k/a Seal A; 924 NORTH
BEVERLY DRIVE, BEVERLY HILLS,
CALIFORNIA, Real Property located
at, a/k/a/ Seal A; ALL FUNDS IN
CREDIT SUISSE PRIVATE BANKING
ACCOUNT NO. 0251-844548-6 IN
THE NAME OF ALEXANDRIA
INVESTMENT, LLC; ALL FUNDS IN
CREDIT SUISSE PRIVATE BANKING
ACCOUNT NO. 0251-922787-3 IN
THE NAME OF ERICA MIHAE KIM;

No. 06-56393

D.C. Nos.
CV-04-02788-ABC
CV-04-03366-ABC
CV-05-03910-ABC

$956,525.06 IN FUNDS SEIZED, from United Commercial Bank Account No. 63600084, in the name of First Stephora Avenue, Inc.; $157,329.05 IN FUNDS SEIZED, from United Commercial Bank Account No. 63599914, in the name of Alexandria Investment, LLC; $174,315.16 IN FUNDS SEIZED from Wilshire State Bank Account No. 3219380, in the name of Se Young Kim; 2004 MERCEDES BENZ CL500, one; 2002 MERCEDES BENZ S500, one; 1990 FERRARI 550 MARANELLO, one; 2003 LANDROVER RANGE ROVER, one; 2002 PORSCHE BOXSTER, one; 2002 TOYOTA TACOMA PICKUP TRUCK, one; 1999 PORSCHE CARRERA, one VARIOUS MISCELLANEOUS FURNITURE AND HOUSEHOLD ITEMS,

*Defendants.*

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant,*

CHRISTOPHER KIM, a/k/a KYUNG
JOON KIM, KJ KIM and CHRIS KIM;
BORA LEE; SE YOUNG KIM; YOUNG
AI KIM; ERICA M. KIM; FIRST
STEPHORA AVENUE, INC.;
ALEXANDRIA INVESTMENT, LLC,
            *Claimants-Appellees,*

            and

OPTIONAL CAPITAL, INC., a/k/a
OPTIONAL VENTURES,
                        *Claimant,*

            v.

REAL PROPERTY LOCATED AT 475
MARTIN LANE, BEVERLY HILLS
CALIFORNIA, Real Property located
at, a/k/a Seal A; 924 NORTH
BEVERLY DRIVE, BEVERLY HILLS,
CALIFORNIA, Real Property located
at, a/k/a/ Seal A; ALL FUNDS IN
CREDIT SUISSE PRIVATE BANKING
ACCOUNT NO. 0251-844548-6 IN
THE NAME OF ALEXANDRIA
INVESTMENT, LLC; ALL FUNDS IN
CREDIT SUISSE PRIVATE BANKING
ACCOUNT NO. 0251-922787-3 IN
THE NAME OF ERICA MIHAE KIM;

No. 07-55653

D.C.  Nos.
CV-04-02788-ABC
CV-04-03386-ABC
CV-05-03910-ABC

OPINION

$956,525.06 IN FUNDS SEIZED, from United Commercial Bank Account No. 63600084, in the name of First Stephora Avenue, Inc.; $157,329.05 IN FUNDS SEIZED, from United Commercial Bank Account No. 63599914, in the name of Alexandria Investment, LLC; $174,315.16 IN FUNDS SEIZED from Wilshire State Bank Account No. 3219380, in the name of Se Young Kim; 2004 MERCEDES BENZ CL500, one; 2002 MERCEDES BENZ S500, one; 1990 FERRARI 550 MARANELLO, one; 2003 LANDROVER RANGE ROVER, one; 2002 PORSCHE BOXSTER, one; 2002 TOYOTA TACOMA PICKUP TRUCK, one; 1999 PORSCHE CARRERA, one VARIOUS MISCELLANEOUS FURNITURE AND HOUSEHOLD ITEMS,

*Defendants.*

Appeal from the United States District Court
for the Central District of California
Audrey B. Collins, District Judge, Presiding

Argued and Submitted
June 9, 2008—Pasadena, California

Filed October 3, 2008

Before: Stephen S. Trott, Sidney R. Thomas, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Thomas

**COUNSEL**

John E. Lee and Monica E. Tait, Assistant United States Attorneys, Los Angeles, California, for the plaintiff-appellant-cross-appellee.

Ralph Rogari, Rehm & Rogari, Los Angeles, California; William K. Mills and Michael K. Zweig, Parker Mills Morin LLP, Los Angeles, California, for the claimants-appellants.

Eric S. Honig, Law Office of Eric Honig, Marina Del Rey, California, for the claimants-appellees-cross-appellants.

## OPINION

THOMAS, Circuit Judge:

This consolidated appeal requires us to decide, *inter alia*, whether the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") permits district courts to authorize *ex parte* extensions of the deadline to file civil forfeiture complaints. We hold that it does. We further hold that, in the event of a dismissal of a civil forfeiture complaint by the court, a district court retains jurisdiction to adjudicate competing claims of ownership over the defendant property.

This case arises out of acts of fraud allegedly masterminded by Christopher Kim ("Kim") on two South Korean corporations, DAS Corporation ("DAS") and Optional Capital, Inc. ("Optional").[1] According to the complaint, Kim, a United States citizen working in South Korea, fraudulently obtained control over a South Korean corporation that Kim renamed Optional Ventures Korea, Inc. Kim then allegedly embezzled millions of dollars from this corporation, transferred the funds into bank accounts in the United States, and used the money to acquire the various assets at issue in this appeal.

---

[1]The issues addressed in this appeal arise out of the district court's orders dismissing the government's civil forfeiture complaint and releasing the defendant properties to Kim and his co-claimants. Accordingly, we "accept as true all well-pleaded facts in the complaint and construe them in the light most favorable to the nonmoving party." *See Watson v. Weeks*, 436 F.3d 1152, 1157 (9th Cir. 2006).

The Republic of Korea requested that the United States extradite Kim. As a result of the extradition request and a subsequent investigation, the United States seized more than $1 million in three U.S. bank accounts along with six vehicles in May 2004 ("the May 2004 properties"). The FBI sent timely notice to the interested parties of the government's seizure of and intent to administratively forfeit those properties pursuant to 18 U.S.C. § 983(a)(1)(A)(i).

Kim, Erica Kim, Bora Lee, and Kim's parents Se Young Kim and Young Ai Kim filed timely claims contesting the forfeiture. Erica Kim filed additional claims on behalf of First Stephora Avenue, Inc. and Alexandria Investments, LLC.[2] Because it was still investigating Kim's fraud, the government filed an *ex parte* application for an extension of time to file its civil forfeiture complaint, pursuant to 18 U.S.C. § 983(a)(3)(A). Judge Dale S. Fischer granted the application, extending the filing deadline for another ninety days. Judge Fischer granted the government two more ninety day extensions, also upon the government's *ex parte* application. Each time, the government based its requests on the fact that its investigation was still ongoing. As a result, it eventually seized other assets in April 2005.

In May 2005, the government filed its complaint for forfeiture of the May 2004 properties along with two Credit Suisse bank accounts in the name of Erica Kim and First Stephora Avenue, Inc., a seventh vehicle, and various pieces of furniture and household items. The Kim Claimants then filed verified statements of interest contesting the forfeiture of all the defendant assets. Optional and DAS, a second alleged corporate victim of Kim's fraud, also filed verified claims to the property. In addition, Optional filed an answer to the complaint. The case involving the May 2004 properties was then

---

[2]We refer to Kim, Erica Kim, Bora Lee, Se Young Kim, Young Ai Kim, First Stephora Avenue, Inc., and Alexandria Investments, LLC, collectively as "the Kim Claimants."

transferred to Judge Audrey B. Collins and consolidated with two related civil forfeiture cases involving real property seized from the Kim Claimants.

The Kim Claimants filed a motion to dismiss the complaint as to the May 2004 properties because the government had not timely filed the complaint. The district court granted the Kim Claimants' motion to dismiss. The district court also ruled that claimants DAS and Optional had standing as victims of Kim's alleged fraud, and thus deferred ruling on the disposition of the defendant property. Subsequently, the district court held that, following its Rule 12(b)(6) dismissal of the government's forfeiture complaint, it no longer had jurisdiction to adjudicate competing claims to the dismissed properties. Thus, the court granted the Kim Claimants' motion for an order releasing the May 2004 properties. DAS, Optional, and the government timely appealed.[3]

I

[1] The Kim Claimants had standing to move for the dismissal of the government's complaint, an issue we review *de novo*. *United States v. 5208 Los Franciscos Way*, 385 F.3d 1187, 1190 (9th Cir. 2004). To demonstrate Article III standing in a civil forfeiture action, a claimant must have "a sufficient interest in the property to create a case or controversy." *Id.* at 1191. This burden is not a heavy one, at least at the initial stages of a forfeiture suit. *Id.* A "claimant need demonstrate only a colorable interest in the property, for example, by showing actual possession, control, title, or financial stake." *Id.* To do so at the motion to dismiss stage, "a claimant must allege that he has an ownership or other interest in the forfeited property." *United States v. $191,910.00 in U.S. Cur-*

---

[3]This opinion disposes of the following appeals only: Nos. 06-56158, 06-56168, 06-56393, and 07-55653. We address the remaining related cases, which were formerly consolidated for the purposes of oral argument, in an accompanying memorandum disposition.

*rency*, 16 F.3d 1051, 1057 (9th Cir. 1994), *superseded on other grounds as stated in United States v. $80,180.00 in U.S. Currency*, 303 F.3d 1182, 1184 (9th Cir. 2002). In their pleadings, the Kim Claimants specifically alleged an ownership interest in the May 2004 properties, which was sufficient at the initial stages of the litigation to establish that they had standing to challenge the civil forfeiture action. Thus, the district court did not err in permitting the Kim Claimants to move for the release of the May 2004 properties.

## II

We have jurisdiction to consider the government's appeal relating to the district court's dismissal of the civil forfeiture complaint because, contrary to the assertions of the Kim Claimants, the government timely filed its notice of appeal. We review the timeliness of a notice of appeal de novo. *See In re Rains*, 428 F.3d 893, 904 (9th Cir. 2005).

**[2]** The Kim Claimants argue that we do not have jurisdiction to consider the government's appeal of the district court's dismissal of the forfeiture complaint because the government filed, and then voluntarily dismissed, its first notice of appeal. However, the government's original notice of appeal was of an interlocutory order, which did not dispose of the entire case. *See Duke Energy Trading & Mktg., LLC v. Davis*, 267 F.3d 1042, 1048 (9th Cir. 2001) (noting that a " 'final decision' . . . 'ends the litigation on the merits and leaves nothing for the court to do but to execute the judgment' " (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978))). Because "an interlocutory appeal is permissive, not mandatory," the government was not obligated to appeal the district court's dismissal of its complaint before the court issued its final order in the case. *See Adamian v. Jacobsen*, 523 F.2d 929, 931 (9th Cir. 1975). On appeal of a final judgment, "the interlocutory order merges in the final judgment and may be challenged in an appeal from that judgment." *Baldwin v. Redwood City*, 540 F.2d 1360, 1364 (9th Cir. 1976). Thus, the

government's notice of appeal was timely filed, and we have appellate jurisdiction over the appeal.

## III

After careful review of the civil forfeiture statute, we conclude that a court is authorized to grant *ex parte* extensions of the deadline to file civil forfeiture complaints. In order to resolve this issue of statutory interpretation, " 'we look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress.' " *United States v. Mohrbacher*, 182 F.3d 1041, 1048 (9th Cir. 1999) (quoting *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 830 (9th Cir. 1996)).

**[3]** Under CAFRA, the government has sixty days after seizing property to send written notice to interested parties. 18 U.S.C. § 983(a)(1)(A). Once the notice is sent, claimants have a limited time to file a claim identifying the specific property being claimed and stating the claimant's interest in such property. *Id.* § 983(a)(2). If a claim is filed, the government then has ninety days from the date the claim was received by the seizing agency to file a civil complaint, obtain a criminal indictment that includes an allegation that the property is subject to forfeiture, or both. *Id.* § 983(a)(3)(A) & (B). If the government does not do so by the deadline, and the property is not returned to the claimant,[4] the civil forfeiture of the property in connection with the particular underlying offense is forever barred. *Id.* § 983(a)(3)(B). The ninety day period may be extended, however, for good cause by the court. *Id.* § 983(a)(3)(A).

Specifically, 18 U.S.C. § 983(a)(3)(A) provides that:

---

[4]The government also has the option of returning the property pending the filing of a complaint. 18 U.S.C. § 983(a)(3)(A).

> Not later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture . . . or return the property pending the filing of a complaint, except that a court in the district in which the complaint will be filed may extend the period for filing a complaint for good cause shown or upon agreement of the parties.

**[4]** Section 983(a)(3)(A) neither expressly permits nor prohibits *ex parte* extensions of time. Therefore, it is necessary to look to the statute as a whole for context. *See Carvajal v. United States*, 521 F.3d 1242, 1248 (9th Cir. 2008) (citing *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 880 (9th Cir. 2001) (en banc)); *see also Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995) (noting that statutes "should not be read as a series of unrelated and isolated provisions"); *United States v. $493,850.00 in U.S. Currency*, 518 F.3d 1159, 1167 (9th Cir. 2008) (noting that the plain language of a statute must be interpreted by examining "the provisions of the entire law").

**[5]** The first relevant subsection, § 983(a)(1)(C), allows the government to obtain an extension of time to send notices of civil forfeiture to interested parties. The subsection authorizes a district court to extend the original sixty day deadline for sending written notice merely "[u]pon motion by the Government." 18 U.S.C. § 983(a)(1)(C). As with § 983(a)(3)(C), the subsection is silent as to whether the government may move for such an extension on an *ex parte* basis. However, there is little doubt that Congress intended to authorize *ex parte* applications: a contrary interpretation would require the government to notify the interested parties—defeating the very purpose of the provision. Thus, although § 983(a)(1)(C) does not contain express authorization for *ex parte* applications for extensions of time to send written notice, one may reasonably infer that Congress intended to authorize them.

**[6]** Similarly, if the government could not obtain an *ex parte* extension under § 983(a)(3)(A), the government would

have to publicly disclose why it wants to delay openly and fully litigating the forfeiture of the property. If the reason for delay is to allow the government to complete an ongoing covert investigation, forcing disclosure would require the government to reveal information about who else is being investigated or what other property is being targeted for seizure. So while allowing *ex parte* extensions under § 983(a)(1)(C) ensures the government does not tip off owners of seized property they are being investigated, allowing them under § 983(a)(3)(A) ensures that the government does not disclose the broader reach of a covert investigation. The government's specific purpose for needing an *ex parte* extension in both situations is slightly different, but the underlying policy rationale is the same: requiring the government to openly seek an extension would force it to reveal sensitive information that would put some ongoing investigations in jeopardy. Congress' silence in § 983(a)(1)(C) therefore supports the contention that an explicit authorization of *ex parte* applications in § 983(a)(3)(A) is unnecessary.

**[7]** The other provision of § 983 addressing government applications for judicial relief prior to the commencement of a civil action is § 983(j)(1)(B). That provision, unlike § 983(a)(3)(A) and § 983(a)(1)(C), includes an express notice requirement. Specifically, § 983(j)(1)(B) provides that prior to the filing of a forfeiture complaint, "[u]pon application of the United States, the court may enter a restraining order or injunction . . . if *after notice to persons appearing to have an interest in the property* and opportunity for such a hearing, the court determines that" certain enumerated conditions are met. *Id.* § 983(j)(1)(B) (emphasis added). This explicit notice requirement indicates that Congress did not view the mere absence of express authorization for *ex parte* applications as sufficient to impose a notice requirement on the government. Thus, we should not infer the existence of an implicit notice requirement in § 983(a)(3)(A). Had Congress wished to impose a notice requirement, it knew how to do so expressly. *See, e.g., Ctr. for Biological Diversity v. U.S. Fish & Wildlife*

*Serv.*, 450 F.3d 930, 939 (9th Cir. 2006); *Boudette v. Barnette*, 923 F.2d 754, 756-57 (9th Cir. 1991) (noting that the *expressio unius est exclusio alterius* canon of statutory interpretation "creates a presumption that when a statute designates certain . . . manners of operation, all omissions should be understood as exclusions").

Another subsection of CAFRA does specifically authorize the government to apply to a court for an *ex parte* order prior to the filing of a complaint. *See* 18 U.S.C. § 981(b)(4)(A). That subsection states that:

> If any person is arrested or charged in a foreign country in connection with an offense that would give rise to the forfeiture of property in the United States . . . the Attorney General may apply to any Federal judge or magistrate judge . . . for an ex parte order restraining the property subject to forfeiture for not more than 30 days, except that the time may be extended for good cause shown[.]

*Id.*

The use of the term "*ex parte*" in this context is necessary, because § 983(j)(1)(B) imposes an express notice requirement when the government applies for a restraining order prior to the filing of the complaint. Section 981(b)(4)(A) carves out a narrow exception to this notice requirement when providing such notice would be unduly burdensome due to the property owner's presence in a foreign country and possible incarceration there. Rather than creating a presumption that *ex parte* applications are permitted only where Congress has expressly authorized them, the use of the term "*ex parte*" in § 981(b)(4)(A) indicates a narrow exception to an explicitly created notice requirement.

The other uses of the term "*ex parte*" in CAFRA provisions likewise fail to indicate that the absence of the term demon-

strates congressional disapproval for *ex parte* applications. The term appears three other times, in subsections that set out procedures subsequent to the filing of the forfeiture complaint.

First, the term appears in § 983(f)(4), which authorizes the government to submit *ex parte* evidence to the district court "in appropriate cases . . . in order to avoid disclosing any matter that may adversely affect an ongoing criminal investigation or pending criminal trial." 18 U.S.C. § 983(f)(4). Explicit authorization for *ex parte* submissions is necessary because Federal Rule of Civil Procedure 5(a) ordinarily requires all court filings to be "served on every party." Indeed, it is highly unusual in our system of law for a party to have to respond to evidence she cannot see. *See generally Hamdan v. Rumsfeld*, 126 S. Ct. 2749, 2786-87 (2006). This same distinction applies to § 981(g)(5), which authorizes the use of *ex parte* evidence to support the government's motion for a stay of a civil forfeiture proceeding where it "may adversely affect an ongoing criminal investigation." 18 U.S.C. § 981(g)(5).

Finally, in § 985(d)(1)(B)(ii), the term "*ex parte*" is used to codify existing case law involving seizures of real property. *See United States v. James Daniel Good Real Property*, 510 U.S. 43, 62 (1993) (invalidating *ex parte* seizure of real property without notice and a hearing absent exigent circumstances). Thus, the term "*ex parte*" was specifically needed for clarity.

**[8]** In sum, when we examine the structure and purpose of the statute, we conclude that a district court may issue extensions of time in which to file a complaint based on an *ex parte* government application. There is nothing in the statute that prohibits the practice, and to hold otherwise would thwart one of the objects of the statute by forcing the government to reveal when an investigation that led to an initial seizure of property is ongoing and has a broader scope than might be apparent from the initial seizure. The inclusion of restrictions

on *ex parte* applications in other sections and the absence of any such restriction in the portion of the statute under consideration here buttress our conclusion.

The Kim Claimants argue that legislative history supports their position. Where, as here, we resolve a question of statutory interpretation by examining the plain language of the statute, its structure, and purpose, our "judicial inquiry is complete," and we need not consult a statute's legislative history. *Campbell v. Allied Van Lines, Inc.*, 410 F.3d 618, 622 (9th Cir. 2005) (internal quotation marks omitted); *see also Hata v. United States*, 23 F.3d 230, 233 n.3 (9th Cir. 1994). This principle of statutory construction is especially true when, as here, "legislators' published statements do not squarely address the question presented." *Oregon v. Ashcroft*, 368 F.3d 1118, 1136 (9th Cir. 2004). An examination of CAFRA's legislative history provides no definitive guidance on the issue before us. *See* Stefan D. Cassella, *The Civil Asset Forfeiture Reform Act of 2000: Expanded Government Forfeiture Authority and Strict Deadlines Imposed on All Parties*, 27 J. Legis. 97, 101 (2001) (describing genesis and eventual passage of H.R. 1658 in both House and Senate).

[9] Accordingly, we conclude from an examination of the statutory language and its structure that courts have the authority to grant *ex parte* applications for time extensions under CAFRA. Therefore, the district court erred in dismissing the government's complaint as to the May 2004 properties.[5]

---

[5]Although we hold that district courts may authorize *ex parte* extensions of time in which to file the forfeiture complaint, we do not consider whether "good cause" was demonstrated here, because the parties did not sufficiently raise the issue before the district court. *See In re E.R. Ferget, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989) (noting that appellate courts will not consider an argument unless it has been "raised sufficiently for the trial court to rule on it"). Furthermore, we also decline to consider whether there is a limit to how many *ex parte* extensions the government may obtain since that issue was not presented to us on this appeal.

IV

Even assuming the district court properly dismissed the government's complaint as to the May 2004 properties, we conclude that it nonetheless retained jurisdiction to adjudicate the competing claims to the property.

**[10]** A civil forfeiture proceeding is an action *in rem. See Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 84 (1992); *United States v. Approximately $1.67 Million*, 513 F.3d 991, 996 (9th Cir. 2008). *In rem* jurisdiction is obtained " 'by arrest under process of the court.' " *United States v. 2,164 Watches, More or Less, Bearing a Registered Trademark of Guess?, Inc.*, 366 F.3d 767, 771 (9th Cir. 2004) (quoting *Alyeska Pipeline Serv. Co. v. The Vessel Bay Ridge*, 703 F.2d 381, 384 (9th Cir. 1983)). The parties do not dispute that the district court properly obtained *in rem* jurisdiction over the May 2004 properties.

Under this analysis, the question would then become, having once properly obtained *in rem* jurisdiction over the disputed properties, could the district court adjudicate ownership of the properties after it dismissed the government's civil forfeiture complaint? Application of the traditional principles and purposes of *in rem* jurisdiction provide an affirmative answer.

*In rem* actions are generally considered proceedings "against all the world." Restatement (Second) of Judgments § 6 cmt. a (1980) (internal quotation marks omitted). "In this type of proceeding, the court undertakes to determine all claims that anyone has to a thing in question." *Id.* The Supreme Court has described *in rem* forfeiture proceedings as legal fictions "developed primarily to expand the reach of the courts and to furnish remedies for aggrieved parties, not to provide a prevailing party with a means of defeating its adversary's claim for redress." *Republic Nat'l Bank*, 506 U.S. at 87 (citations omitted).

**[11]** Applying the traditional view of the purpose and reach of *in rem* proceedings therefore indicates that the district court retained jurisdiction to determine ownership of the May 2004 properties following the court's dismissal of the government's complaint. Indeed, the court had not only the jurisdiction but the duty to resolve the parties' competing claims to the *res*. To conclude otherwise would do violence to "the 'general principle' " in *in rem* forfeiture actions " 'that jurisdiction, once vested, is not divested.' " *Id.* at 85 (quoting Chief Justice Marshall, sitting as Circuit Justice in *United States v. The Little Charles*, 26 F. Cas. 979 (No. 15,612) (CC Va. 1818)).

The Fourth Circuit confronted a similar question in the context of a voluntary dismissal in *In re Matthews*, 395 F.3d 477 (4th Cir. 2005).[6] There, the Fourth Circuit held that the district court lacked jurisdiction to resolve competing claims to one

---

[6]Two other circuits also discuss this question, but do so only briefly. *See United States v. $515,060.42 in United States Currency*, 152 F.3d 491, 501 n.9 (6th Cir. 1998); *United States v. 414 Kings Highway*, 128 F.3d 125, 127 (2d Cir. 1997). In both cases, the courts concluded that the district court retained jurisdiction to dispose of the disputed property following the dismissal of the forfeiture action. Both also supported their conclusions by relying on the proposition that a "court may consider collateral issues after an action is no longer pending." *$515,060.42*, 152 F.3d at 501 n.9 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 394-95 (1990)); *see also Kings Highway*, 128 F.3d at 127 (citing *Cooter & Gell*). As discussed by the *Matthews* court, *see* 395 F.3d at 481, neither case is particularly persuasive here because *Cooter & Gell* held only that, following a voluntary dismissal, courts retain the authority to resolve collateral issues—issues that do not involve "a judgment on the merits of an action," such as attorney fees or sanctions. *Cooter & Gell*, 496 U.S. at 395-96. We agree with the Fourth Circuit that, "[b]y contrast, the determination of ownership interests in property seized in connection with a forfeiture action goes to the heart of the merits of that action." *Matthews*, 395 F.3d at 481. Moreover, *Cooter & Gell* involved a voluntary dismissal. Even if the adjudication of ownership interests could reasonably be characterized as a "collateral matter," it is not clear that this limitation on jurisdiction would apply here, where the dismissal was on the merits. Thus, although *Kings Highway* and *$515,060.42* reach the same result, we do not adopt their reasoning here.

of the thirteen original, handwritten copies of the Bill of Rights after the government voluntarily dismissed its forfeiture action. *Id.* at 481-83. At the time of the voluntary dismissal, none of the three competing claimants had filed an answer to the forfeiture complaint. *Id.* at 480. The Fourth Circuit held that "[o]nce the United States voluntarily dismissed its forfeiture action, all proceedings in the action were terminated, and the district court lacked the authority to issue further orders addressing the merits of the case." *Id.* at 482.

A voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(i) grants a plaintiff " 'an absolute right to dismiss [ ] without prejudice' . . . and requires no action on the part of the court." *Duke Energy*, 267 F.3d at 1049 (quoting *Pedrina v. Chun*, 987 F.2d 608, 610 (9th Cir. 1993)) (first alteration in original). The filing " 'itself closes the file. There is nothing the defendant can do to fan the ashes of that action into life and the court has no role to play.' " *Id.* The effect of the filing " 'is to leave the parties as though no action had been brought.' " *Id.* (quoting *Commercial Space Mgmt. Co. v. Boeing Co.*, 193 F.3d 1074, 1077 (9th Cir. 1999)). "Once the notice of dismissal has been filed, the district court loses jurisdiction over the dismissed claims and may not address the merits of such claims or issue further orders pertaining to them." *Id.*

The *Matthews* court recognized this special, self-executing effect of a Rule 41 voluntary dismissal, and discussed it at length, citing our opinion in *Duke Energy*. 395 F.3d at 480-83. Indeed, the *Matthews* court expressly premised its holding on the fact that the dismissal ending the case was voluntary. *See id.* at 482.

In this case, the district court—not the government—dismissed the complaint.[7] While the *Matthews* court's reason-

---

[7]Moreover, by the time the district court dismissed the government's complaint, the government could not have obtained a voluntary dismissal had it wanted one, as Optional had already filed its answer. *See Duke Energy*, 267 F.3d at 1048 (noting that a voluntary dismissal may only be filed before a defendant has filed an answer).

ing may be persuasive in the context of a voluntary dismissal, it is not applicable to cases in which a district court has acted to dismiss a case on the merits, after the parties have appeared and filed responsive pleadings. *See, e.g., In re Marino*, 181 F.3d 1142, 1144 (9th Cir. 1999) (noting that a dismissal with prejudice, even when based on statute of limitations grounds may be considered a dismissal on the merits); *see also Suckow Borax Mines Consol. v. Borax Consol.*, 185 F.2d 196, 205 (9th Cir. 1951). Outside of the unique procedural context of a plaintiff exercising an absolute right of voluntary dismissal under Rule 41(a)(1)(i), the traditional principles of *in rem* jurisdiction remain paramount. *See, e.g., Republic Nat'l Bank*, 506 U.S. at 85-86 (reasoning that once jurisdiction is established by seizure of the property, the court ordinarily maintains jurisdiction until the litigation ends).

[12] Such an outcome is also in accord with judicial efficiency concerns. Where, as here, the government's claim fails on the merits, courts will not be obliged to dismiss competing claimants' allegations of ownership, just to have the claimants initiate a separate suit. *See, e.g., United States v. Martinson*, 809 F.2d 1364, 1368 (9th Cir. 1987) ("[A] separate civil action[ ] is inadequate in light of the time and expense involved, particularly where the court considering the motion already has jurisdiction over the matter."); *United States v. Wilson*, 540 F.2d 1100, 1104 (D.C. Cir. 1976) (noting, in the context of a Fed. R. Crim. P. 41(e) hearing regarding disposition of seized property, that the fact that adequate civil remedies exist "neither discharges the district court's duties nor disturbs its jurisdiction") (cited with approval in *Martinson*, 809 F.2d at 1368-69).

[13] Therefore, we conclude that the district court retained *in rem* jurisdiction over the property after it dismissed the government's complaint, and had jurisdiction to resolve the remaining competing claims of interest in the property.

V

**[14]** The district court awarded attorney fees to the Kim Claimants on the ground that they "substantially prevail[ed]" in the civil forfeiture action with regard to the May 2004 properties. 28 U.S.C. § 2465(b)(1)(A). Because we reverse the judgment of the district court, we vacate the district court's award of attorney fees to the Kim Claimants. *See Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 622 (9th Cir. 2003).

VI

In conclusion, we hold that 18 U.S.C. § 983(a)(3)(A) authorizes district courts to grant *ex parte* extensions of time in which to file a civil forfeiture complaint. We further hold that district courts retain jurisdiction to adjudicate competing claims to seized property even after the underlying civil forfeiture action has been dismissed. The parties shall bear their own costs on appeal.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**