# FILED

JUN 30 2015

**NOT FOR PUBLICATION**

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   AZ-14-1309-KiPaJu |
| HOWARD FLETCHER THRUSTON, | Bk. No.   10-27593 |
| Debtor. | Adv. No.   10-2156 |
| HOWARD FLETCHER THRUSTON, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| DAVID M. REAVES, Chapter 7 Trustee, | |
| Appellee. | |

Argued and Submitted on June 19, 2015,
at Phoenix, Arizona

Filed - June 30, 2015

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Eddward P. Ballinger, Jr., Bankruptcy Judge, Presiding

Appearances:     Appellant Howard Fletcher Thruston argued pro se;
Misty Weniger Weigle of Reaves Law Group argued for
appellee, David M. Reaves, Chapter 7 Trustee.

Before: KIRSCHER, PAPPAS and JURY, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See 9th
Cir. BAP Rule 8024-1.

Howard Fletcher Thruston ("Debtor") appeals a judgment denying his discharge. Chapter 7[2] trustee, David M. Reaves ("Trustee"), objected to Debtor's discharge under § 727(a)(2), (a)(3) and (a)(4). The bankruptcy court later granted Trustee's motion for summary judgment and entered a judgment denying Debtor's discharge on all counts. On appeal, we vacated and remanded the summary judgment order and judgment because a genuine dispute existed as to whether Debtor acted with the intent necessary for denial of his discharge under § 727(a)(2) or (a)(4). After a two-day trial, the bankruptcy court determined that Debtor made a number of false oaths in connection with his bankruptcy case and denied his discharge under § 727(a)(4)(A).[3] We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A. Events leading to Trustee's discharge objection and motion for summary judgment**

Debtor is a licensed contractor and real estate broker. He has been married to Morgen Thruston since 1986. During the course of their marriage and prior to the petition date, Mrs. Thruston acquired title to various real properties in Iowa and Arizona (the

---

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[3] The bankruptcy court stated at the beginning of its Memorandum Decision that it was denying Debtor's discharge under § 727(a)(4) because "Debtor knowingly and fraudulently made a false oath or account, or withheld from an officer of the estate recorded information relating to the Debtor's property and financial affairs," which implicates both § 727(a)(4)(A) and (D). However, later in the decision the court referred only to Debtor's false oaths and omissions, and the judgment denying discharge states only that Debtor "made a number of false statements under oath in connection with this case[.]" Therefore, we conclude Debtor's discharge was denied under § 727(a)(4)(A) only.

-2-

"Iowa Property," the "Citrus Property," the "Northridge Property" and the "Wagon Wheel Property"). On the petition date, Mrs. Thruston also owned a 2008 Hummer, leased a 2007 GMC truck, and possessed a 100% membership interest in Rosemont, LLC, which owned a commercial building in Arizona. Debtor was the sole shareholder of his construction company, Dynasty Homes, Inc. ("Dynasty Homes"). Dynasty Homes operated out of the building owned by Rosemont, LLC. Mrs. Thruston was employed by Dynasty Homes as a designer for about twenty years, with her most recent salary being $100,000 annually. She left her position there sometime between 2005 and 2008, after the birth of their eighth child.

Debtor filed a skeletal chapter 7 bankruptcy petition on August 30, 2010; Mrs. Thruston did not join in the petition. Several days later, Debtor filed a "Declaration" listing numerous creditors but not specifying the nature of the debts. Debtor attended a continued § 341(a) meeting of creditors on October 19, 2010. When Trustee informed him that the couple's community assets were property of Debtor's bankruptcy estate even though Mrs. Thruston did not file, Debtor stated "Right. I know that." § 341(a) Hr'g Tr. (Oct. 19, 2010) 8:6.

After receiving several extensions of time to file the requisite documents, Debtor filed his original schedules and statement of financial affairs ("SOFA") on October 19, 2010, just minutes before the continued § 341(a) meeting. In his summary of schedules, Debtor listed real property assets of "1,150,000?" and current income of $339.50. In his Schedule B, Debtor listed one Chase checking account containing $50.00 and real estate and

-3-

contractor licenses with no value. Debtor left Schedules A, C, D, E, F, G and H blank; he did not schedule any real properties, vehicles, creditors or codebtors. In his Schedules I and J, Debtor listed monthly income of $339.50 and monthly expenses of $2,869.53. In executing his Declaration Concerning Debtors' Schedules, Debtor typed "[i]ncomplete-need help."

Debtor's SOFA was similarly bare. He did, however, disclose Dynasty Homes in Item 21, listing himself as "President" with a "?" percentage of stock ownership (and his wife with a "?" next to her name). He also attached a list of twelve lawsuits, in which he identified the name of the opposing party, the case number, the name of the court and the nature of each lawsuit. Some suits clearly involved real property and other possible estate assets, but none were specifically identified or itemized anywhere in Debtor's schedules. He also did not list any foreclosures of real property within one year of the bankruptcy filing in Item 5. As with his schedules, Debtor declared under penalty of perjury that the information contained in his SOFA was true and correct.

In light of the deadline under Rule 4004 and Debtor's essentially blank schedules, Trustee filed an adversary complaint on December 1, 2010, objecting to Debtor's discharge under § 727(a)(2), (a)(3) and (a)(4). Trustee alleged that Debtor failed to disclose significant assets held by Mrs. Thruston and to provide information on a number of items, including any real properties owned by her or Debtor, bank accounts owned by Mrs. Thruston and tax returns for either of them. Debtor denied Trustee's allegations.

As ordered by the bankruptcy court, Debtor filed amended

-4-

schedules and SOFA on January 31, 2011. He disclosed a few more personal property assets in his Schedule B, including his wedding ring, clothing, Dynasty Homes machinery valued at $30,000 and his interest in "lawsuits" of "unknown" value. But Schedules A, C and D remained blank. To Schedule F, Debtor attached a spread sheet listing over 100 unsecured creditors. Debtor disclosed four leases on Schedule G by name only and provided no descriptions or identifying details of the leases. Debtor listed Mrs. Thruston as a codebtor in his Schedule H, but failed to provide the name of any creditors or debts for which she was a codebtor. Unlike his original schedules, Debtor's avowal to the accuracy of his amended schedules was unconditional.

In his motion for summary judgment, Trustee argued that as of the petition date Debtor or Mrs. Thruston owned the Iowa Property (valued between $500,000 and $700,000), the Citrus Property (valued at $1.5 million) and the Northridge Property (valued at approximately $1 million), and further argued that Mrs. Thruston possessed an interest in Rosemont, LLC, the Wagon Wheel Property, the Hummer and the GMC truck. Trustee contended these assets were acquired during the marriage and therefore were community assets, even if Mrs. Thruston held title to them. Consequently, Debtor possessed a community property interest in all of these assets yet failed to disclose them in his schedules or SOFA. Trustee further contended that Mrs. Thruston's membership interest in Rosemont, LLC was valued at over $2.3 million, and that she had transferred

-5-

it postpetition to a Stephen Trice without court authorization.[4]

Trustee pointed out that during the pendency of Debtor's bankruptcy case, secured creditors had moved for relief from the automatic stay as to three of the subject real properties. In each instance, Debtor opposed stay relief and asserted a legal or equitable interest in the property at issue. He also pointed out that Mrs. Thruston, Dynasty Homes and Rosemont, LLC all filed for bankruptcy relief after Debtor initiated his bankruptcy case. However, those cases suffered from the same maladies as did Debtor's: a bare bones petition, no initial schedules or SOFA, and numerous emergency motions in lieu of responsive documents.[5]

Debtor spent much time in his opposition to Trustee's motion calling him a liar, a fraud and a bully. As for the motion's merits, Debtor contended he never hid or concealed estate assets, arguing that the real and personal properties identified by

[4] On the same day Mrs. Thruston transferred her 100% membership interest in Rosemont, LLC to Mr. Trice, Rosemont, LLC filed a chapter 11 bankruptcy case. According to its schedules, the building owned by Rosemont, LLC was valued at $2.3 million.

[5] All three of Mrs. Thruston's cases were ultimately dismissed, her last chapter 11 case being dismissed with prejudice and barring her from filing any bankruptcy cases until September 19, 2012. In that case, Judge Nielsen said in his Order to Show Cause that "there is reason to believe debtor and her husband are engaged in a calculated practice of filing uncompleted bankruptcy cases to avoid their secured creditors' collection efforts."

Thereafter, Mrs. Thruston filed a chapter 11 case in Iowa, which was dismissed on June 20, 2012. It also appears that an individual named Philip Howard Trice (not to be confused with Stephen Trice) filed a chapter 7 bankruptcy case in Arizona on October 4, 2012, listing his residence as the Northridge Property, where Debtor and Mrs. Thruston resided from the petition date until the property was foreclosed and they were forcibly evicted. The bankruptcy court dismissed that case for failure to file schedules and statements.

-6-

Trustee were Mrs. Thruston's sole and separate property and so he was not required to list them in his bankruptcy case. In any event, argued Debtor, the banks had foreclosed on the Citrus Property and the Northridge Property in January 2010, eight months prior to his petition date, and had foreclosed on the Rosemont, LLC building in January 2011, which was underwater and sold for only $712,000. Further, Trustee had since abandoned the Iowa Property and Dynasty Homes as having no value for the estate. As for the vehicles, Debtor argued that the GMC truck lacked equity and was returned when the lease expired and the Hummer, which also had no equity, had since been repossessed. In short, Debtor maintained he had no interest in the assets identified by Trustee or, even if he did, they had no value for the estate.

The bankruptcy court granted summary judgment on all counts. On appeal, the Panel vacated and remanded the judgment, concluding that a genuine issue of fact existed as to whether Debtor acted with the requisite intent under § 727(a)(2) or (a)(4).

**B. Trial on Trustee's claims under § 727(a)(2) and (a)(4)**

The bankruptcy court held a trial on Trustee's § 727(a)(2) and (a)(4) claims on March 5 and 6, 2014.[6] Both parties filed pretrial statements. Debtor's position remained unchanged, with the exception of his contention that on January 2, 2011, before he filed his amended schedules and SOFA, he met with bankruptcy attorney Clint Smith, who Debtor claimed told him that he was not required to list his non-filing spouse's sole and separate

---

[6] Trustee ultimately withdrew his § 727(a)(3) claim, and based on its ruling under § 727(a)(4)(A), the bankruptcy court opted to not address Trustee's claim under § 727(a)(2).

property. Mr. Smith's affidavit confirmed Debtor's contention. However, on cross-examination, Mr. Smith admitted that he never discussed any specific assets with Debtor or reviewed any of the couple's records to determine how any particular asset was held and whether it was Mrs. Thruston's sole and separate property. Debtor further claimed that in ruling on a prior stay relief motion, Judge Baum had ruled that Mrs. Thruston's sole and separate property was not part of his bankruptcy estate.

Four witnesses testified: Debtor; Mrs. Thruston; Trustee and Mr. Smith. Mrs. Thruston testified that the reason she held title to various assets as her sole and separate property was to ensure that if her credit was negatively affected, Debtor could still purchase investment properties with his good credit. She conceded this arrangement benefitted their family.

With respect to each asset Trustee contended Debtor failed to disclose, the evidence was as follows:

**1.   Real properties not disclosed**

    **a.   Iowa Property**

Exhibits for this property included a 2006 warranty deed reflecting that Mrs. Thruston took title as her sole and separate property, Trustee's February 2011 notice of intent to abandon the property and a sheriff's deed recorded August 8, 2012. While Mrs. Thruston could not recall certain specifics of the Iowa Property (when she bought it, how she financed the purchase, how many loans were on it or the home's square footage), she testified that she held title to it from day one. The mortgage for the Iowa Property, however, contained both her and Debtor's signature. When questioned about this, Mrs. Thruston explained that the bank

-8-

required both of their signatures on the mortgage, which explained why Debtor's name was added later in a different type.

Debtor testified that he was not a co-borrower for the Iowa Property, but that the bank required him to sign the mortgage document acknowledging that Mrs. Thruston was the borrower. Debtor further testified that he thought he held an interest in the Iowa Property when he opposed the bank's motion for relief from stay. When asked why he did not list it in his Schedule A, Debtor had no plausible explanation, but did admit that if it was a community asset, it should have been listed.

### b. Citrus Property

Exhibits for this property included a 1997 warranty deed indicating that Mrs. Thruston took title as her sole and separate property, a disclaimer deed with the same date signed by Debtor and a trustee's deed upon sale dated January 7, 2010. Mrs. Thruston testified that she purchased the property with funds she received from a prior home sale.

Debtor testified that, despite his execution of a disclaimer deed, when the bank sought relief from stay for the Citrus Property in November 2010 he believed he held an interest in it. He further admitted that at the related hearing in December 2010, he affirmatively argued that he held a community interest in the property and that it had significant equity. However, Debtor later clarified his testimony, stating that he thought he held a "lawsuit" interest in the Citrus Property at the time of the stay relief hearing due to the lender's fraud, not an ownership interest, and that he had disclosed this interest in his list of court actions. Debtor testified that he did not list the Citrus

-9-

Property in Schedule A because it had been foreclosed prior to his bankruptcy. And he did not list the foreclosure in Item 5 of his SOFA because the property was not his.

### c. Northridge Property

Exhibits for this property included a 2001 warranty deed reflecting that Mrs. Thruston took title as her sole and separate property, a disclaimer deed with the same date signed by Debtor, a quitclaim deed dated November 2002 from Mrs. Thruston purporting to convey her interest to both her and Debtor, a quitclaim deed dated April 2007 from Debtor purporting to convey his interest back to Mrs. Thruston, and a trustee's deed upon sale dated January 26, 2010. Mrs. Thruston had little recollection as to why the quitclaim deeds were executed, but believed it was done for financing purposes. Debtor testified that when the bank sought relief from stay in March 2011, he believed he held a possessory interest in the Northridge Property as well as a "lawsuit" interest. Debtor testified that he did not list the foreclosure in Item 5 of his SOFA because the property was not his.

### d. Wagon Wheel Property

Exhibits for this property included a 2007 warranty deed showing that Mrs. Thruston took title as her sole and separate property and a disclaimer deed with the same date signed by Debtor. Mrs. Thruston testified that she had never been to this property, which consisted of an old trailer in a trailer park. She testified that she had sold it, but could not remember when. She could also not recall what she paid for it, if anything, but did recall receiving $35,000 when she sold it and using the proceeds to pay bills.

**2. Personal property not disclosed**

    **a. Rosemont, LLC**

Several exhibits were admitted regarding this entity, including: (1) Articles of Organization dated November 15, 2000, which indicated that its original members were Stephen and Carol Trice; (2) Articles of Amendment dated October 17, 2006, and recorded February 7, 2007, reflecting the Trices' resignation as members and Mrs. Thruston appointment as the entity's sole member; and (3) Articles of Amendment dated December 6, 2010, removing Mrs. Thruston as the sole member and adding Mr. Trice as the sole member and statutory agent. Also admitted were numerous deeds of trust for the building owned by Rosemont, LLC, recorded between May 2005 and February 2009.

Mrs. Thruston could not recall what, if anything, she paid Mr. Trice for Rosemont, LLC in 2006, but believed that when she purchased the entity she was also purchasing the building it owned. She testified that she did not know whether Dynasty Homes ever operated out of the Rosemont, LLC building or leased it, but then later testified that she could not remember when Dynasty Homes eventually vacated the building. In relation to any lease agreement with Dynasty Homes, Mrs. Thruston testified that although she collected the monthly lease checks, she could not remember what the amounts were. Mrs. Thruston could also not recall who managed Rosemont, LLC once she obtained ownership or whether she took over the entity's bank accounts, or what the monthly income and expenses were for the building or what she did with the net income if any was available.

Mrs. Thruston admitted encumbering the Rosemont, LLC building

with four deeds of trust during the time she owned it for the purpose of obtaining $1.475 million in loans, but testified that she was not sure what the funds were used for or whether she even received the $1 million loan for one of them. Mrs. Thruston testified that the building was underwater when she transferred her interest in the entity to Mr. Trice, and that the intent for the transfer was so that Mr. Trice could obtain refinancing. She could not recall, however, if she ever informed Mr. Trice about the multiple deeds of trust. She could also not recall any details about Rosemont, LLC's bankruptcy filing on the day of the transfer to Mr. Trice.

Debtor testified that Dynasty Homes paid no rent to Rosemont, LLC, but rather occupied the space on a trade basis. Debtor testified that Mr. Trice had transferred his interest in Rosemont, LLC to Mrs. Thruston in 2006, because he could no longer service the debt on the building and he owed Mrs. Thruston money. Debtor admitted to preparing the documentation for the 2006 transfer. He testified that he did not list Rosemont, LLC in his schedules because he had no interest in it; it was Mrs. Thruston's sole and separate property. Debtor testified that he was not required to seek court approval when Mrs. Thruston transferred her interest in Rosemont, LLC back to Mr. Trice in December 2010, as it was not his property.

### b. 2008 Hummer and 2007 GMC truck

Exhibits for these vehicles included titles reflecting Mrs. Thruston's ownership, a deficiency letter from the lender for the Hummer, and a letter from the lender for the GMC truck showing that Mrs. Thruston owed a balance of $763.35 for excess tire wear.

-12-

Mrs. Thruston testified that she drove the Hummer and their son drove the GMC truck; Debtor drove a Cadillac Escalade borrowed from Mrs. Thruston's father. Debtor confirmed this. Mrs. Thruston testified that she alone made all of the payments on the two vehicles. Trustee testified that according to Debtor's bank statements, vehicle payments had been made from a bank account belonging to Debtor.

### c. Bank accounts

Debtor admitted he did not disclose all of his bank accounts in his original Schedule B, but testified that he provided all of his bank statements from six different accounts to Trustee at the § 341(a) meeting. Debtor testified that he did not list all of the accounts in his original Schedule B because they had zero balances. His answer was the same with respect to his amended Schedule B. He also did not list any of Mrs. Thruston's bank accounts because she had no money.

Trustee testified that on the petition date, the Chase account disclosed by Debtor had a balance of about $4,000, not the $50.00 Debtor claimed. The Chase account exhibit indicated that Debtor's balance on the petition date was $4,224.51.

## C. The bankruptcy court's ruling

The parties submitted post-trial briefing; the bankruptcy court took the matter under submission. Trustee maintained that the evidence established that the assets at issue were community assets, not separate property of Mrs. Thruston, and should have been disclosed by Debtor. Trustee argued that Debtor's course of conduct, including his failure to disclose significant properties with millions of dollars in secured debt, his failure to disclose

-13-

his and his wife's interests in Rosemont, LLC and its subsequent transfer, and his failure to disclose their vehicles, among other things, demonstrated Debtor's intent to conceal the assets. Debtor's conduct further demonstrated that he was very much aware of the omitted properties, asserting or denying an interest in them depending upon which position best served his immediate purposes. Trustee maintained that it was irrelevant the omitted assets ultimately proved to have little or no value to the estate.

The bankruptcy court issued its Memorandum Decision and judgment denying Debtor's discharge under § 727(a)(4)(A). It first analyzed whether the assets identified by Trustee were community assets requiring disclosure by Debtor. The court found that, at a minimum, the Iowa Property, Rosemont, LLC, the Hummer and the GMC truck were community assets and therefore should have been disclosed in Debtor's schedules and SOFA. However, based on the disclaimer deeds executed by Debtor, the court found that the Citrus Property and the Wagon Wheel Property were Mrs. Thruston's sole and separate property and therefore did not have to be disclosed. The court further found that Debtor had acted with the requisite intent in failing to disclose the identified community assets, among other things. It specifically found Mrs. Thruston's testimony "less than credible," and that the couple had "engaged in a pattern of delay to put off the inevitable." Debtor timely appealed the judgment.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(J). Unlike final orders, interlocutory orders decide merely one aspect of the case without disposing of the case

-14-

in its entirety on the merits. See United States v. 475 Martin Ln., 545 F.3d 1134, 1141 (9th Cir. 2008). Because the bankruptcy court granted Trustee relief under § 727(a)(4)(A), it decided not to address his § 727(a)(2) claim. However, despite this interlocutory ruling, the judgment contains a Civil Rule 54(b) certification. Thus, it is a final judgment. See Civil Rule 54(b)(incorporated by Rule 7054); see also Belli v. Temkin (In re Belli), 268 B.R. 851, 855-56 (9th Cir. BAP 2001). Accordingly, we have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court err when it denied Debtor's discharge under § 727(a)(4)(A)?

## IV. STANDARDS OF REVIEW

In an action for denial of discharge, we review: (1) the bankruptcy court's determinations of the historical facts for clear error; (2) its selection of the applicable legal rules under § 727 de novo; and (3) its application of the facts to those rules requiring the exercise of judgments about values animating the rules de novo. Searles v. Riley (In re Searles), 317 B.R. 368, 373 (9th Cir. BAP 2004), aff'd, 212 F. App'x 589 (9th Cir. 2006). Factual findings are clearly erroneous if they are illogical, implausible or without support in the record. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010). We give great deference to the bankruptcy court's findings when they are based on its determinations as to the credibility of witnesses. Id. (noting that as the trier of fact, the bankruptcy court has "the opportunity to note variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in

-15-

what is said."). If two views of the evidence are possible, the trial judge's choice between them cannot be clearly erroneous. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573-75 (1985).

## V. DISCUSSION[7]

**A.    Community assets**

Section 541 provides that a bankruptcy estate consists of "all legal or equitable interests of the debtor in property of the debtor as of the commencement of the case," including "[a]ll interests of the debtor and the debtor's spouse in **community property**," either under the debtor's sole, equal, or joint management and control, or liable on an allowable claim against the debtor. § 541(a)(1) & (2)(emphasis added).

Arizona is a community property state; a presumption of community property arises as to property acquired during marriage **regardless of the form of title**. See A.R.S. § 25-211(a); Carroll v. Lee, 712 P.2d 923, 929 (Ariz. 1986)(presumption of community property "applies to property acquired during marriage **even though title is taken in the name of only one spouse**.")(emphasis added). Because Debtor and his wife live in Arizona, the presumption of community property automatically arises as to all property and assets acquired during their marriage, even those solely titled in Mrs. Thruston's name. See A.R.S. § 25-211(a); Carroll, 712 P.2d at 929. To the extent Debtor possessed a community property interest in the assets identified by Trustee, those interests

---

[7] As with his prior appeal, Debtor spends significant time discussing his disdain for Trustee and his lengthy litigation with the National Bank of Arizona. Unfortunately, these matters have no relevance to the issue before us, so we do not address them.

-16-

became property of his bankruptcy estate as of the petition date.

Arizona's presumption of community property may be rebutted by clear and convincing evidence. Bender v. Bender, 597 P.2d 993, 995-96 (Ariz. Ct. App. 1979). A party may rebut the presumption of community property by establishing, among other things, that one spouse executed a disclaimer deed, which disclaims all interests, claims and rights to real property. See Bell–Kilbourn v. Bell–Kilbourn, 169 P.3d 111, 114 (Ariz. Ct. App. 2007) (disclaimer deed is a contract between the parties and such evidence rebuts the community property presumption).

Here, the bankruptcy court found that Debtor had sufficiently rebutted the community property presumption as to the Wagon Wheel Property and the Citrus Property based on the disclaimer deeds executed contemporaneously with Mrs. Thruston taking sole and separate title. However, the court found that Debtor failed to provide sufficient evidence to overcome the community property presumption as to the Iowa Property, the Northridge Property,[8] Rosemont, LLC, the Hummer and the GMC truck. We must give great deference to the bankruptcy court's finding that Mrs. Thruston's testimony about properties she claimed were her sole and separate

[8] In ruling that the Northridge Property was likely a community asset, the bankruptcy court stated that no argument or evidence was presented that Debtor had executed a disclaimer deed renouncing any interest in this property. This is factually incorrect. A disclaimer deed for the Northridge Property was admitted as Exhibit #132 and is part of the appellate record. Nonetheless, the bankruptcy court did not include the Northridge Property in its list of community assets that Debtor should have disclosed. Therefore, we believe the court's factual error here is harmless and would not change the outcome of this appeal if reversed. In ruling against Debtor, the bankruptcy court identified several other community assets (among other things) that should have been disclosed, providing a sufficient basis to deny his discharge under § 727(a)(4)(A).

-17-

property was "less than credible," with the majority of her answers to questions being "I don't know" or "I don't remember." In re Retz, 606 F.3d at 1196.

Debtor contends the alleged community assets were Mrs. Thruston's sole and separate property because they were in her name. We reject this argument. Even though Mrs. Thruston held title to the Hummer and GMC truck, other evidence showed that payments for these vehicles were being made from Debtor's bank account, which Debtor did not dispute. Debtor also did not provide any evidence to show that Rosemont, LLC was not a community asset. The court specially found that Mrs. Thruston's testimony regarding her ownership of Rosemont, LLC "lacked credibility." Finally, besides taking title to the Iowa Property as Mrs. Thruston's sole and separate property, Debtor presented no evidence of a disclaimer deed (or some equivalent). To the contrary, the mortgage for the Iowa Property reflected both Debtor's and Mrs. Thruston's signatures. Although both of them testified that the bank required Debtor to sign acknowledging that Mrs. Thruston was the borrower, the bankruptcy court apparently found this testimony did not rebut the presumption that the Iowa Property was community property.

Despite his claim of ignorance, Debtor's calculated execution of disclaimer deeds clearly shows that he knows holding title to property in one spouse's name does not make it that spouse's sole and separate property under Arizona law. He knows that additional steps must be taken to disclaim the other spouse's community property interest.

Debtor further contends he relied on the advice of his

-18-

counsel that anything solely owned by Mrs. Thruston was not part of his bankruptcy estate and therefore did not have to be listed in his schedules and statements. The bankruptcy court rejected this argument. Mr. Smith testified that he and Debtor did not discuss any particular assets and whether they qualified as community or sole and separate property. Instead, the conversation was very general in nature — that a spouse's sole and separate property is not property of the estate and need not be disclosed. We agree with the bankruptcy court.

We also reject Debtor's contention that Judge Baum had previously **ruled** he had no interest in any property Mrs. Thruston owned as her sole and separate property. Debtor here refers to a comment Judge Baum made at a stay relief hearing for the Citrus Property on December 28, 2010, **after** Debtor had filed his original schedules and SOFA with no mention of the Citrus Property. The colloquy between Debtor and Judge Baum follows:

> DEBTOR: As far as the house goes, obviously Arizona is a community property state. I have an interest in the property because of that and ---

> JUDGE BAUM: Not if you sign a disclaimer, [sic] deed.

Hr'g Tr. (Dec. 28, 2010) 4:14-17. Judge Baum's comment on the record was not a **ruling** that assets titled in Mrs. Thruston's name were in fact her sole and separate property as Debtor contends; he was telling Debtor generally what the law is in Arizona. Debtor has already raised this argument before the Panel in his prior appeal, which was rejected.

On this record, we discern no clear error in the bankruptcy court's finding that the Iowa Property, Rosemont, LLC, the Hummer and the GMC truck were community property assets that Debtor

-19-

should have disclosed in his schedules and SOFA.

**B.    The bankruptcy court did not err when it denied Debtor's discharge under § 727(a)(4)(A).**

Construing liberally Debtor's pro se brief, which fails to cite to the record, he disputes only the bankruptcy court's findings of fact; he does not contend the court applied an incorrect standard of law.  Therefore, our review is limited to determining whether the bankruptcy court's findings are illogical, implausible or without support in the record.

The party objecting to a debtor's discharge under § 727(a) bears the burden of proving by a preponderance of the evidence that the debtor's discharge should be denied.  In re Retz, 606 F.3d at 1196.  Courts are to "'construe § 727 liberally in favor of debtors and strictly against parties objecting to discharge.'"  Id. (quoting Bernard v. Sheaffer (In re Bernard), 96 F.3d 1279, 1281 (9th Cir. 1996)).

Section 727(a)(4)(A) states:  "The court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account."  "A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath."  Khalil v. Developers Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 172 (9th Cir. BAP 2007).  To obtain a denial of discharge under § 727(a)(4)(A), the objector must show:  "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently."  In re Retz, 606 F.3d at 1197.

**1.    False Oath**

The bankruptcy court found that Debtor had omitted multiple items of important information from his schedules and SOFA, which Debtor admitted at trial.  His original schedules and SOFA were "essentially blank."  In addition to the community assets that he should have disclosed, the court observed that Debtor failed to list even minimal personal property such as clothing, furniture or the like in his first attempt.  The court rejected Debtor's defense that his original schedules and SOFA should be excused because he acknowledged they were "incomplete" and that he needed help.  This is because Debtor's amended schedules and SOFA, filed two months later, were "little improvement" and he "did not make the same plea then."  The court found Debtor's suggestion that the disclosed pieces of information in certain parts of his schedules could have led Trustee to make certain assumptions about various assets was also insufficient.  Finally, while Debtor presented several bank statements from his various accounts to Trustee at the § 341(a) meeting, only one — the Chase account — was ever disclosed in his schedules.  Other than Trustee, no one else knew of these accounts, including Debtor's creditors.  The court found that Debtor offered no explanation for these missing accounts, other than to say they contained no funds.

The evidence in this case established that Debtor made a false oath.  Therefore, the bankruptcy court did not clearly err in finding that Debtor made a false oath in both his original and amended schedules and SOFA.

**2.    Materiality**

A fact is material "'if it bears a relationship to the

-21-

debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property.'" In re Khalil, 379 B.R. at 173; see also In re Retz, 606 F.3d at 1198. An omission or misstatement that "detrimentally affects administration of the estate" is material. Wills v. Wills (In re Wills), 243 B.R. 58, 63 (9th Cir. BAP 1999)(citing 6 Lawrence P. King et al., COLLIER ON BANKRUPTCY ¶ 727.04[1][b] (15th ed. rev. 1998)).

The bankruptcy court found that Debtor's omissions were material "in that they relate[d] to the existence and disposition of his property." It is without question that the undisclosed community assets and bank accounts concerned the discovery of assets and the existence and disposition of Debtor's property. The only argument Debtor appears to make here is that his failure to disclose these items was immaterial because the assets had no equity for the benefit of the estate. However, the fact these undisclosed assets may have lacked value is of no consequence for purposes of § 727(a)(4)(A). A false statement or omission may be material even if it does not cause direct financial prejudice to creditors. In re Wills, 243 B.R. at 63. And a lack of realizable value for creditors certainly does not negate a debtor's duty of full and candid disclosure of his or her financial condition. Palmer v. Downey (In re Downey), 242 B.R. 5, 17 (Bankr. D. Idaho 1999). Debtor was obligated to disclose **all** assets in which he held an interest, valuable or not.

The evidence in this case established that Debtor's false oaths related to material facts. We see no clear error with the bankruptcy court's finding of materiality.

-22-

**3.   Knowingly and Fraudulently Made with Intent to Deceive**

A debtor "'acts knowingly if he or she acts deliberately and consciously.'"  In re Khalil, 379 B.R. at 173 (quoting Roberts v. Erhard (In re Roberts), 331 B.R. 876, 883 (9th Cir. BAP 2005)); see also In re Retz, 606 F.3d at 1198.  A debtor acts with fraudulent intent when:  (1) the debtor makes a misrepresentation; (2) that at the time he or she knew was false; and (3) with the intention and purpose of deceiving creditors.  Id. at 1198-99. Fraudulent intent is typically proven by circumstantial evidence or by inferences drawn from the debtor's conduct.  In re Retz, 606 F.3d at 1199.  Circumstantial evidence may include showing a reckless indifference or disregard for the truth.  Id.; In re Wills, 243 B.R. at 64 (intent may be established by a pattern of falsity, debtor's reckless indifference, or disregard of the truth).

The bankruptcy court found that Debtor knew his schedules and SOFA were false.  It rejected Debtor's argument that he had a good faith belief he had no interest in many of the assets.  In rejecting this defense, the court pointed to Debtor's objections to various lender's motions for relief from stay.  Debtor filed an objection to a stay relief motion for the Iowa Property on October 1, 2010, claiming an interest in it.  Yet, eighteen days later when he filed his original schedules and SOFA, Debtor omitted this interest.  Debtor maintained at trial that he genuinely believed at the time he had an interest in the Iowa Property.  The court found that if that were the case, Debtor should have listed it in his original schedules filed on October 19, 2010.

The same was true for the Citrus Property and the Northridge

-23-

Property. Debtor objected to stay relief for the Citrus Property on November 15, 2010, claiming significant equity and a "community property interest" in it, yet he omitted this interest in his original schedules and SOFA filed one month before and in his later-filed amended schedules and SOFA. The lender on the Northridge Property sought stay relief on February 17, 2011. By this time, Debtor had filed his amended schedules and SOFA. Nevertheless, he still objected to stay relief on March 15, 2011, arguing that he had a right to protect his interests by filing bankruptcy and that the home was foreclosed upon illegally. To the extent Debtor claims he meant he had a "lawsuit" interest in this property and not an ownership interest, he is mistaken. As a chapter 7 debtor, any such "lawsuit" interest belonged to Trustee.

With respect to the Hummer and GMC truck, Debtor had no explanation for why they were not listed, other than he did not drive them and they were titled in Mrs. Thruston's name. As for Rosemont, LLC, the bankruptcy court found that Debtor controlled the entity and its sole asset, and that ownership was held by Mrs. Thruston for "convenience sake." The court rejected Debtor's "no harm no foul" argument for not disclosing Rosemont, LLC because it lacked value for creditors. The same was true for Debtor's failure to disclose all of his bank accounts which he claimed lacked funds.

The bankruptcy court also rejected Debtor's contention that he relied on Mr. Smith's legal advice about sole and separate property as a reason for not disclosing the identified assets. We further observe that even if Mr. Smith's advice could negate Debtor's intent for failing to disclose the assets titled in

-24-

Mrs. Thruston's name, this does not explain why Debtor's schedules were almost entirely blank, failing to disclose even his own personal property or a community interest in any books, furniture or other household goods, which Debtor admitted he had.

Debtor declared under the penalty of perjury that the information contained in his schedules and SOFA was true and correct. Clearly, it was not. While good faith errors are acceptable and understandable, the bankruptcy court found that is not what occurred here:

> This is not a case where the sole issue is the nondisclosure of any one piece of property. The evidence shows numerous nondisclosures, all of which collectively paint an inaccurate picture of the Debtor's finances and conduct.

Mem. Dec. (May 13, 2014) 9 n.6. Debtor had plenty of opportunity to amend his original schedules and SOFA to correct any deficiencies. Even after speaking to Mr. Smith and after the bankruptcy court ordered him to do so, it still took Debtor almost a month to file his amended ones. The amendments were of marginal improvement. His conduct suggests that he was clearly aware of the omitted assets; he asserted or denied an interest in them depending upon which position best served his immediate needs. At minimum, this conduct demonstrates his reckless indifference or disregard for the truth.

We do not perceive any clear error with the bankruptcy court's finding that Debtor's false oath was made knowingly and fraudulently and with intent to deceive. Accordingly, the bankruptcy court did not err when it denied Debtor's discharge under § 727(a)(4)(A).

## VI. CONCLUSION

For the reasons stated above, we AFFIRM.