

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. HI-18-1033-BSL |
| CUZCO DEVELOPMENT U.S.A., LLC, | Bk. No. 16-00636-RJF |
| Debtor. | |
| AE SOOK KANG, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| CUZCO DEVELOPMENT U.S.A., LLC, | |
| Appellee. | |

Submitted Without Argument on January 24, 2019

Filed – April 4, 2019

Appeal from the United States Bankruptcy Court
for the District of Hawaii

Honorable Robert J. Faris, Bankruptcy Judge, Presiding

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appearances:     Appellant Ae Sook Kang, pro se on brief; Chuck C. Choi and Allison A. Ito of Choi & Ito on brief for Appellee Cuzco Development U.S.A., LLC

Before:     BRAND, SPRAKER and LAFFERTY, Bankruptcy Judges.


## INTRODUCTION

Appellant Ae Sook Kang appeals an order (1) denying her request to extend pretrial filing deadlines and to continue an evidentiary hearing, and (2) granting appellee's motion to strike Kang's direct testimony declarations and sustaining appellee's claim objection. We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.     Prepetition events**

### 1.     Background of the parties' relationship

The claim at issue arises from a dispute over a commercial lease agreement between Kang, her corporate entity Migun International Corp. ("Migun"), and the appellee, debtor Cuzco Development U.S.A., LLC ("CUSA"). Kang is of Korean descent. English is her second language and she has a limited ability to speak, read, write and understand English. CUSA is a Hawaii LLC in the business of commercial property development and leasing.

In 2007, Kang was a sole proprietor of a retail store selling household

and other dry goods. The store was located in what is known as the Keeaumoku International Village ("Property"). In 2009, Kang incorporated her retail business under the name Migun.

In early 2009, Kang learned that the Property had been sold to CUSA. Shortly after the purchase, CUSA began a major reconstruction of the Property's roof and parking lot. Kang claimed she never received notice of the reconstruction project. The project is at the root of the falling out between the parties.

On July 1, 2009, CUSA, as landlord, and Migun, as tenant, entered into a commercial lease agreement ("Lease") for a space in the Property described as Space I-102A, which consisted of approximately 1,442 square feet. This was apparently the same space Kang was already renting. The initial base rent was $1,946.70 per month, and the monthly common area maintenance charge was $1,442.00 ($1.00 per sq. ft.). The Lease term was three years, with an option for Migun to renew for an additional two years. CUSA alleged that Migun paid only the July 2009 rent in full, paid no rent in August 2009, and made only a couple of partial payments in September and October 2009, leaving a balance owed of over $7,000. Kang closed the store a few months after signing the Lease.

2. **Kang and Migun's complaint**

In 2014, Kang and Migun ("Plaintiff") filed suit against CUSA and others in Hawaii state court. Plaintiff's remaining claims against CUSA

prior to its bankruptcy filing were (1) breach of contract, (2) unjust enrichment, (3) breach of implied covenant of good faith and fair dealing, and (4) promissory estoppel.

As alleged by Plaintiff, when the unannounced reconstruction project began in April 2009, Mr. Byun, CUSA's former owner, came to Kang's store with his property manager, Justin Cho. Byun showed Kang plans for the Keeaumoku Supermarket, a new anchor tenant of the Property and where Kang's store was currently located. Byun told Kang that, after construction, she could return to the same space for the same rent and CAM, and that he would compensate her for any losses resulting from the renovations. Byun told Kang that her store would be beautifully remodeled and finished in no time. Plaintiff alleged that based on Byun's promises and the planned renovations, Migun entered into the Lease with CUSA to rent the same space in the new Keeaumoku Supermarket.

As alleged by Plaintiff, in late August 2009, Byun told Kang that construction was delayed and that she should put her inventory in storage. Kang stored the inventory in an empty second-floor space on the Property. Despite not being in business since April 2009, Plaintiff maintained that rent payments were made to CUSA, which gradually increased to $3,800 per month without notice. Plaintiff also continued to advertise for the store during this time period, spending $4,000 per month. By late November or early December 2009, Plaintiff could no longer afford to pay rent or

continue operations. Plaintiff alleged that, at this time, Byun told Kang she could stop paying rent. Byun then returned to Korea and was unreachable. In early 2011, Plaintiff learned that CUSA leased Plaintiff's space to another party. CUSA then offered Plaintiff a smaller space for more rent, which Plaintiff refused.

For damages, Plaintiff alleged that most of the store's $61,000 in inventory was ruined by water damage caused by CUSA's remodeling of the Property. Plaintiff alleged that ground diggings in the parking lot, which at times blocked the store's entrance, and daily construction noise deterred customers from patronizing the store and caused further financial loss. Plaintiff alleged that 2009 sales revenues were 50% less than those for 2008, which were $308,348.10, and that the loss was directly related to the reconstruction project. Plaintiff asserted damages totaling less than $300,000.

## B.    Postpetition events

CUSA filed its chapter 11[1] bankruptcy case on June 20, 2016, which stayed the state court action with Plaintiff.

### 1.    The claim, the related objection and scheduling order

Kang, individually and on behalf of Migun, filed a $3 million proof of

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

claim for "Breach of Lease" with the assistance of her state court counsel, Mr. Arensmeyer ("Claim"). As evidence of the alleged debt, Kang attached a copy of the first amended complaint ("FAC").

CUSA objected to the Claim ("Claim Objection"), arguing that it should be disallowed in its entirety because Kang had failed to meet her burden of proof as to the Claim's validity. CUSA argued that it was not liable to Kang or Migun on any of the claims asserted in the FAC. CUSA supported its argument with a copy of the Lease.

Despite Kang's and Arensmeyer's failure to appear at the Claim Objection hearing on June 26, 2017, counsel for CUSA requested an evidentiary hearing to resolve the parties' dispute. The court agreed and set an evidentiary hearing for January 9, 2018. Deadlines were set forth in the court's scheduling order as follows:

- Discovery: all discovery was to be completed by December 12, 2017;
- Briefs: simultaneous briefing was due by December 26, 2017;
- Exhibits: both parties were to serve exhibits by December 12, 2017;
- Written Direct Testimony:
  - Kang's direct testimony declarations, witness list and exhibit list were to be filed and served by December 12, 2017;
  - CUSA's direct testimony declarations, witness list, exhibit list and any evidentiary objections to Kang's declarations and exhibits were to be filed and served by December 26, 2017;
  - Kang's rebuttal testimony declarations or any objections to

CUSA's declarations and exhibits were to be filed and served by January 2, 2018.

The scheduling order warned that the evidentiary hearing would be continued only in "extraordinary circumstances."

Although the parties' exhibits are not in the record, it appears that some discovery was conducted, at least by CUSA. With the use of an interpreter, CUSA deposed Kang on December 4, 2017. Kang and Arensmeyer failed to appear without explanation at the first scheduled deposition on November 28. CUSA also served Kang with requests for production of documents.

Kang did not file direct testimony declarations, her witness list or exhibit list and did not serve CUSA with a witness list, exhibit list or any exhibits by the December 12, 2017 deadline. However, on December 13, Kang did serve CUSA with an exhibit list and 19 exhibits.

Kang did not file a brief by the December 26, 2017 deadline, nor did she file one thereafter.

Per the scheduling order, CUSA timely filed and served all of its required documents by the December 26, 2017 deadline. CUSA also timely filed four motions in limine. Two of the motions sought to exclude any direct testimony (either oral or by declaration) from Cho, Byun's assistant and alleged former manager of the Property, and two other parties on the basis that they were not timely filed and were hearsay. A third sought to

7

exclude Kang's direct testimony for not being timely filed and to exclude Exhibits 6-19 for lack of authentication by a sponsoring witness. Without direct testimony from Kang and her other witnesses, CUSA argued that the subject exhibits could not be authenticated and were inadmissible.

The fourth motion in limine sought to exclude any testimony Kang might offer to support Exhibit 13, which consisted of photographs of seven paintings Kang alleged were destroyed during the reconstruction project. Kang had stated at deposition that the paintings were worth $1 million. CUSA argued that not only were the photographs suspect, but nowhere in the FAC had Kang/Migun ever alleged the loss or damage of any paintings or artwork, and certainly not $1 million worth.

Kang did not file any objections to CUSA's declarations and exhibits or any rebuttal testimony to CUSA's declarations by the January 2, 2018 deadline. Kang also did not oppose any of CUSA's four motions in limine.

### 2. Kang's motion

On January 4, 2018, after all pretrial filing deadlines had run, Kang filed a Motion to Continue Evidentiary Hearing And/Or for Extensions of Pretrial Filing Deadlines ("Motion to Continue and Extend Deadlines"). The motion itself was one-third of a page, supported by a two-page declaration from Arensmeyer. Arensmeyer explained that he was sick and out of the office the day that Kang's direct testimony declarations were due,

8

December 26, 2017.[2] The following day, December 27, he traveled to Kona for a morning hearing and planned to be back to the office by noon. His return flight was delayed for the entire afternoon, and he was unable to work on Kang's case that day. Arensmeyer explained that his office had only recently made contact with witness Cho, whom Arensmeyer understood resided on the mainland, and that Cho's direct testimony declaration was now complete and being filed that day. However, communication difficulties with Kang were preventing Arensmeyer from completing her declaration. Kang spoke only Korean and no one in his office spoke Korean. Arensmeyer stated that Kang's declaration would be filed as soon as possible once completed.

Kang sought to extend the time for filing Cho's direct testimony declaration to January 4, 2018, but requested no specific date for filing her own declaration because it was still not complete. Kang also sought to continue the evidentiary hearing to an unspecified date. The Motion to Continue and Extend Deadlines was set for hearing on the same day as the evidentiary hearing, January 9.

Kang filed her direct testimony declaration and exhibit list on January 8, 2018, nearly one month late. The declaration contained much of the same information as the FAC. One notable difference was Kang's statement that, in addition to her inventory, she had also stored expensive

---

[2] Actually, they were due on December 12, 2017.

artwork in the second-floor space at the Property that was never returned to her. She estimated the artwork's value at $1 million.

CUSA opposed the Motion to Continue and Extend Deadlines, arguing that it should be denied due to Kang's failure to respond to the Claim Objection, her failure to conduct any discovery in preparation for the evidentiary hearing, and her continued failure to comply with the pretrial scheduling order. CUSA argued that Kang had not established excusable neglect for an extension under Rule 9006(b)(1) and *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 390, 398 (1993)("*Pioneer*"):  (1) there was actual prejudice to CUSA; (2) the length of the delay and its potential impact on the judicial proceedings was great; (3) the reason for the delay was not sufficiently explained and appeared to be an incomplete and self-serving description of events; and (4) Kang had not acted in good faith as demonstrated by her failure to properly prosecute the Claim. CUSA further argued that Kang had not shown any "extraordinary circumstances" for a continuance of the evidentiary hearing under Local Rule 9006-1.

CUSA also moved to strike the late-filed Cho and Kang declarations and to sustain the Claim Objection or dismiss the Claim due to lack of timely evidence. CUSA argued that the court could sustain the Claim Objection because Kang could not meet her burden of proof without direct testimony and properly authenticated exhibits.

10

### 3. The bankruptcy court's ruling

After hearing argument from the parties, the bankruptcy court announced its oral ruling denying Kang's request for an extension to file her direct testimony declarations and to continue the evidentiary hearing. The court found that she had failed to establish excusable neglect for the extension and extraordinary circumstances for the continuance. For the same reasons, the court granted CUSA's request to strike the untimely Cho and Kang declarations. In light of that ruling, Arensmeyer conceded that Kang would not be able to meet her burden of proof for her Claim. The court then ordered that the Claim Objection was sustained. It later entered a written order, which Kang timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.[3]

## III. ISSUES

1. Did the bankruptcy court abuse its discretion in denying Kang's request to extend the deadline for filing direct testimony declarations and to continue the evidentiary hearing?

---

[3] A court's ruling on a motion to continue does not end the litigation, so generally orders denying a motion for a continuance are interlocutory. However, because the bankruptcy court decided the merits of the Claim by sustaining the Claim Objection, which ended the litigation, the court's decision to deny a continuance of the evidentiary hearing became final and appealable. *See United States v. Real Prop. Located at 475 Martin Ln., Beverly Hills, Cal.*, 545 F.3d 1134, 1141 (9th Cir. 2008).

2. Did the bankruptcy court err in sustaining the Claim Objection?

## IV. STANDARDS OF REVIEW

The bankruptcy court's denial of an extension of time under Rule 9006(b) is reviewed for an abuse of discretion. *Warner Angle Hallam Jackson & Formanek, P.L.C., v. Lock (In re LMM Sports Mgmt., LLC)*, 2016 WL 3213829, at *3 (9th Cir. BAP June 1, 2016) (citing *Pioneer*). The bankruptcy court's decision to deny a continuance is also reviewed for abuse of discretion. *See Orr v. Bank of Am.*, 285 F.3d 764, 78, 507 U.S. 3903 (9th Cir. 2002). A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are clearly erroneous. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

In the claim objection context, we review the bankruptcy court's legal conclusions de novo and its findings of fact for clear error. *Lundell v. Anchor Const. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1039 (9th Cir. 2000). A bankruptcy court's factual finding is clearly erroneous if it is illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

////

////

////

////

# V. DISCUSSION

**A.**   **The bankruptcy court did not abuse its discretion in denying Kang's requests to extend the deadline for filing direct testimony declarations and to continue the evidentiary hearing.**

### 1.    Extending the deadline

After the time allowed for the performance of an act has expired, Rule 9006(b)(1) allows the court, in its discretion, to enlarge the time retroactively upon motion of the delinquent party "where the failure to act was the result of excusable neglect."

To determine whether a party's failure to meet a deadline constitutes "excusable neglect," courts must apply a four-factor equitable test, examining:  (1) the danger of prejudice to the non-moving party; (2) the length of the delay caused by the neglect, and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the movant's reasonable control; and (4) whether the movant acted in good faith. *Pioneer*, 507 U.S. at 395. The determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's (or its lawyer's) omission." *Id.*

The bankruptcy court did not cite *Pioneer* or expressly articulate its four-factor test. However, it did engage in the equitable analysis those cases mandate and apparently concluded that they weighed against granting the extension. *See Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1224

13

(9th Cir. 2000) (appellate court will generally not reverse lower court's decision for failure to articulate *Pioneer* test if the court actually engaged in the equitable analysis *Pioneer* and its progeny mandate). Kang takes issue, generally, with the bankruptcy court's findings to support its decision that she failed to establish excusable neglect. We conclude that the court's findings are not clearly erroneous.

### a. Danger of prejudice to the non-moving party

The bankruptcy court found that there was a danger of prejudice to CUSA, the estate, and other creditors if Kang's untimely direct testimony declarations were filed because, until all claims are adjudicated, the case cannot be closed and a final distribution cannot be made.

Kang argues that there was no prejudice to CUSA by the late filings because CUSA is still undergoing litigation in its bankruptcy case. In other words, litigating the Claim would have had no detrimental impact on closing the case or distribution to creditors. This does not establish that the court's finding of prejudice to the non-moving party was illogical, implausible, or without support in the record. Kang also suggests that the court erred by not considering the greater prejudice she would suffer by losing her opportunity to sue CUSA. She fails to cite any authority to support her argument that prejudice to the moving party must be considered under *Pioneer*.

////

### b. Length of delay and potential impact on judicial proceedings

The bankruptcy court had to consider whether the delay of filing Kang's direct testimony declarations on January 4 and January 8, 2018, rather than on December 12, 2017, created any negative impact on judicial proceedings. The court did not discuss this factor explicitly but made findings which indicate that this factor weighed against granting the extension. The court found that Kang's untimely filed declarations would not provide CUSA the time it should have had to review, respond, and prepare for the evidentiary hearing.

The delayed filing had already caused CUSA to have to submit its direct testimony declarations without the benefit of Kang and Cho's testimony. While Kang's delay of just under one month may not seem unduly lengthy on its face, that delay must be considered in view of the scheduling order. Waiting to file direct testimony declarations until just five days and one day, respectively, before the evidentiary hearing on a $3 million claim clearly put CUSA and the court at a disadvantage. The delayed filings left CUSA and the court with little opportunity to review the declarations prior to the evidentiary hearing, and it left CUSA unable to adequately prepare for cross-examination.

### c. Reason for the delay

Arensmeyer explained that the reason for not filing the direct

testimony declarations on December 26, 2017, even though they were due on December 12, 2017, was because he was out of the office that day and the next due to illness, another hearing and delayed flights. Specifically, as to the Cho declaration, Arensmeyer stated that his office had recently made contact with Cho, whom he understood was living on the mainland, to complete his declaration. The reason given for the delay in filing Kang's declaration was that the language barrier between Kang and his office prevented him from completing it in a timely manner.

The bankruptcy court determined that Arensmeyer's reason for the delay in filing the Cho and Kang declarations was not excusable: the evidentiary hearing had been set over six months prior; nothing in the record indicated that Arensmeyer had done any real work in the case until the day the materials were due; and any language barriers should have been solvable given the time allotted.

Kang argues that the bankruptcy court erred in finding that the reason for her delay in filing the direct testimony declarations was not excusable, given the difficulties in reaching Cho and the communication issues between her and her counsel. We disagree.

The record amply supports the bankruptcy court's finding that the reason for Kang's delay was not excusable. Although Arensmeyer explained why he was unable to work on Kang's case on December 26 and 27, he failed to explain what work had been done, if any, during the

previous six months. This made it appear as though he had waited until December 26 to complete the declarations, which were already 14 days late by that point. As for Cho, the record indicates that Arensmeyer knew Cho had been living in Nevada since at least 2014 because he had prepared an affidavit for Cho in the state court action. Additionally, Arensmeyer stated that his office had only recently made contact with Cho, but he never stated when his office first tried to contact him.

As for communication issues between Kang and Arensmeyer, Arensmeyer noted the difficulties in securing Kang's declaration due to her inability to speak, read or write English and the lack of anyone in his office who spoke Korean. While this is an impediment, it was not an insurmountable one. Arensmeyer failed to explain what attempts had been made to secure Kang's declaration for the past six months and why those attempts had failed. A translator was used in the state court action. A translator also attended Kang's deposition on December 4, 2017. Clearly, Korean translators were available. As CUSA noted, Korean-speaking creditors were not an anomaly in its bankruptcy case.

Most importantly, and a question that was never explained, was why Kang failed to seek any relief before the deadline to file direct testimony declarations had already passed. Kang had been litigating the issues between her and CUSA for years in state court prior to the bankruptcy filing. She and Arensmeyer knew her case. Why it took over six months to

17

obtain her declaration for the evidentiary hearing, which turned out to be essentially a rehash of the FAC, is unknown.

### d. Whether the movant acted in good faith

Kang argues that she did not act in bad faith by filing the Motion to Continue and Extend Deadlines. She maintains that she did her best to file the direct testimony declarations timely. The record belies this. As the bankruptcy court found, Kang offered no legitimate excuse for why she was unable to comply with the December 12 deadline to file them.

The bankruptcy court did not make a finding of bad faith at the evidentiary hearing, but it did so in the order, stating that "[t]he record does not show good faith." Kang was not diligent in prosecuting her Claim. In addition to not filing any response to the Claim Objection or appearing for the initial hearing, Kang failed to conduct any discovery, failed to file a trial brief, failed to file a witness list or exhibit list, failed to file any rebuttal testimony, and she served her exhibits on CUSA a day late. In short, she failed to comply with **any** deadline set forth in the scheduling order. She also failed to file any responses to CUSA's four motions in limine. Her recurring failure to comply with deadlines and properly prosecute her case indicates a lack of good faith.

### 2. The continuance

Our determination that the bankruptcy court did not abuse its discretion by denying Kang's extension request essentially renders moot

18

the question whether the court abused its discretion by not granting a continuance of the evidentiary hearing. Arensmeyer conceded that, absent Cho and Kang's direct testimony and any admissible documentary evidence, Kang did not have a case. The lack of admissible evidence from Kang to support her Claim eliminated the need to continue the evidentiary hearing. Notwithstanding, Kang did not establish any "extraordinary circumstances" warranting a continuance. Accordingly, the bankruptcy court did not abuse its discretion in denying her request for a continuance.

**B.     The bankruptcy court did not err in sustaining the Claim Objection.**

Kang argues that the bankruptcy court erred in sustaining the Claim Objection because such a result was a substantial detriment to her. While the court's ruling may be a detriment to Kang, that the does not mean the court erred.

In claim objections, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. *In re Lundell*, 223 F.3d at 1040. If the objecting party successfully rebuts the presumption, the claimant bears the burden of proof to show by a preponderance of the evidence that its claim is valid, and "the ultimate burden of persuasion remains at all times upon the claimant." *Id.* at 1039.

Once the bankruptcy court ruled, correctly as we have found, that

Kang would not be given an extension of time to file her direct testimony declarations or be able to provide any documentary evidence in support of her Claim, Arensmeyer conceded that Kang would not be able to meet her burden of proof. The court sustained the Claim Objection because of the insufficiency of evidence provided by Kang to establish CUSA's liability.

Kang does not assign any error to the bankruptcy court's finding that she failed to meet her burden of proof for her Claim. Given the record and her lack of argument, we conclude that the court's finding was not illogical, implausible, or without support in the record, and that it did not err in sustaining the Claim Objection.

## VI. CONCLUSION

For the reasons stated above, we AFFIRM.